UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA WILLIAMS, et al., | Case No.: 2:21-cv-01676-APG-VCF |
| Plaintiffs, | **Order on Motions to Dismiss, Strike, and Intervene** |
| v. | [ECF Nos. 53, 95, 98, 105, 133, 164, 168] |
| STEVE SISOLAK, et al., | |
| Defendants. | |

Plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 (collectively, the plaintiffs) sue 20 defendants, alleging violations of the Thirteenth Amendment and the Trafficking Victims Protection Reauthorization Act (TVPRA). The plaintiffs' claims arise from their experiences as victims of human trafficking that they contend were facilitated by Nevada's system of legal prostitution. Four motions to dismiss,[1] two motions to strike, and one motion to intervene are pending. I grant in part three motions to dismiss, I deny as moot the remaining motion to dismiss and the motions to strike, and I deny the motion to intervene.

**I.    BACKGROUND**

The plaintiffs divide the defendants into five groups for ease of reference: (1) "State Defendants;" (2) "City Defendants;" (3) "Escort Agency Defendants;" (4) "Strip Club Defendants;" and (5) "Brothel Defendants." *Id.* at 5-6, 8-9. The State Defendants are Nevada Governor Steve Sisolak and Nevada Attorney General Aaron Ford, both sued in their official capacities. *Id.* at 5. The City Defendants are the City of Las Vegas, Clark County, and Nye County. *Id.* at 6. The Escort Agency Defendants are Jamal Rashid; Mally Mall Music, LLC;

---

[1] The first of these motions to dismiss was filed as a motion to strike the plaintiffs' First Amended Complaint or, in the alternative, to dismiss. *See* ECF No. 53.

Future Music, LLC; PF Social Media Management, LLC; E.P. Sanctuary; Blu Magic Music, LLC; Exclusive Beauty Lounge, LLC; First Investment Property LLC; V.I.P. Entertainment, LLC; MP3 Productions, Inc.; and MMM Productions, Inc. *Id.* at 8. The Strip Club Defendants are SHAC, LLC doing business as Sapphire Gentleman's Club; SHAC MT, LLC; and Las Vegas Bistro doing business as Larry Flynt's Hustler Club. *Id.* The Brothel Defendants are Western Best LLC and Western Best, Inc. doing business as the Chicken Ranch. *Id.* at 9. The plaintiffs refer to the Escort Agency, Strip Club, and Brothel Defendants collectively as the "Sex Industry Defendants." *Id.*

Williams alleges that when she was 17 years old, non-party Andre McDaniels trafficked her in Houston. *Id.* at 27-28. She alleges that from 2006 to 2017, her victimization continued in Nevada, California, Illinois, and Texas under the control of another trafficker, defendant Jamal Rashid, and his affiliates, the Escort Agency Defendants. *Id.* at 27, 34. Her ordeal in Nevada also included being trafficked "through the strip club[] . . . Sapphire [Gentleman's Club]," which is one of the Strip Club Defendants. *Id.* at 35.

Jane Doe #1 alleges that she was trafficked from a young age. *Id.* at 37. While she does not specify where her trafficking began, a family member eventually "induced her to travel to Las Vegas" where multiple non-party pimps trafficked her from 2013 to 2018. *Id.* at 37-38. During this period, she was also trafficked in New York, New Jersey, Colorado, Oregon, Texas, New Mexico, California, Oklahoma, Arizona, and Georgia. *Id.* at 38. At some point, she "became engaged in legal brothel prostitution at the Chicken Ranch while being pimped by" non-party traffickers. *Id.* at 40. She further alleges that the Chicken Ranch, a Brothel Defendant, subjected her to debt bondage in the course of her employment. *Id.* at 41-42.

Jane Doe #2 claims that she was trafficked in Houston from the age of 18. *Id.* at 42. Eventually, she travelled to Las Vegas where a series of non-party pimps trafficked her through Sapphire Gentleman's Club and Larry Flynt's Hustler Club, both Strip Club Defendants. *Id.* at 42-43. She contends that the Strip Club Defendants, like the Brothel Defendants, engaged in a form of debt bondage and were complicit in sexual abuses by clients. *Id.* at 46-48. Jane Doe #2's ordeal in Nevada spanned from March 2017 to September 2018. *Id.* at 42.

The plaintiffs allege that different subgroups of Sex Industry Defendants perpetrated and benefited from their trafficking in violation of the Thirteenth Amendment and the TVPRA. *See generally id.* While the plaintiffs were separately trafficked and their ordeals relative to one another were distinct, they contend that these experiences are collectively attributable to Nevada's system of legalized prostitution because "legal trade correlates with exponential increases in the illegal trade." *Id.* at 18. Given this alleged correlation, the plaintiffs assert the same Thirteenth Amendment and TVPRA claims against the State and City Defendants, seeking a declaration that Nevada's system of legal prostitution is unconstitutional, and seeking to enjoin that system. *Id.* at 3, 54.

Seven motions are pending. Clark County moves to strike the First Amended Complaint or, in the alternative, to dismiss. ECF No. 53. Its motion is joined by the remaining City Defendants, the State Defendants, and the Brothel Defendants. ECF Nos. 58; 69; 71; 99. The Brothel Defendants, Strip Club Defendants SHAC, LLC and SHAC, MT LLC (collectively, the Sapphire Club), and the State Defendants move separately to dismiss. ECF Nos. 98; 133; 168. The plaintiffs move to strike excess pages in Clark County's reply to their opposition to its motion to dismiss. ECF No. 95. Clark County moves to strike three errata filed by the plaintiffs to add the language "oral argument requested" to each of their first three briefs opposing

3

dismissal. ECF No. 164.  Finally, Russell G. Greer moves to intervene as a defendant. ECF No. 105.

## II.     ANALYSIS

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  The complaint must set forth coherently "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted).

I apply a two-step approach when considering motions to dismiss.  First, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiffs' favor. *Iqbal*, 556 U.S. at 678; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013).  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

Second, I must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679.  A claim is facially plausible when the complaint alleges

Case 2:21-cv-01676-APG-VCF   Document 171   Filed 07/18/22   Page 5 of 19

facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation omitted).  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### A.    Clark County's Motion to Dismiss (ECF No. 53)

Clark County argues that I lack subject matter jurisdiction because the plaintiffs fail to properly allege Article III standing.  Specifically, Clark County contends that the plaintiffs fail to articulate a concrete, particularized, and actual or imminent injury; that they allege a theory of causation that is too hypothetical and tenuous; and that the relief they seek would fail to redress their injuries.[2]  The plaintiffs respond that they adequately allege both their own injuries and injuries of presently trafficked individuals by pleading third-party standing.  They further respond that their injuries are sufficiently traceable to the City and State Defendants, and that the damages they seek would redress their own past injuries, while the declaratory and injunctive relief they seek would redress the injuries of presently trafficked individuals.[3]  The State

---

[2] Clark County also presents several arguments on the merits.

[3] The plaintiffs also argue that Clark County improperly attempts to "incorporate by reference" its prior, mooted motion to dismiss (ECF No. 36).  While I agree with Clark County that Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere," the rule does not contemplate wholesale incorporation of denied motions to effectively evade the Local Rules' page limits.  Therefore, I base my decision on Clark County's pending motion, without reference to its previous motion.

5

Defendants, Nye County, the City of Las Vegas, and the Brothel Defendants join Clark County's motion, largely echoing Clark County's arguments or providing no additional analysis.

Article III of the Constitution "limits the jurisdiction of federal courts to '[c]ases' and '[c]ontroversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (simplified). The "irreducible constitutional minimum of [Article III] standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (simplified). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

Surviving a motion to dismiss with respect to the causation element requires the plaintiffs to "establish a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (simplified). "A causation chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous." *Id.* (simplified). But where "a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Id.* (simplified).

The plaintiffs do not plausibly allege that the injuries they suffered are fairly traceable to Nevada's system of legal prostitution or to the State or City Defendants. The plaintiffs allege that legal prostitution in Nevada "correlates with exponential increases in the illegal trade," in part due to Nevada's failure to "enforce its limited regulation." ECF No. 49 at 18, 27. But Nevada's legal system of prostitution is, at best, an attenuated cause of the plaintiffs' alleged injuries. The plaintiffs reference numerous third-party actors throughout the First Amended Complaint "whose independent decisions collectively [had] a significant effect on the plaintiffs' injuries." *Maya*, 658 F.3d at 1070 (simplified).

Williams alleges that she was groomed and trafficked by Andre McDaniels, an unnamed "violent trafficker," defendant Jamal Rashid, Tarnita Woodard, unnamed "managers [and] assistant traffickers" to Rashid, and an unnamed "final sex trafficker." ECF No. 49 at 27-36. She also references various complicit strip clubs. *Id.* Jane Doe #1 similarly alleges that she was groomed and trafficked by an unnamed abuser, that a family member introduced her to multiple pimps (one of which was the family member's spouse) who then trafficked her, and that a "guerilla" pimp, a "Romeo" pimp named Khalieff Wilson, a "madam" pimp named Nicole Flowers, and defendant Chicken Ranch also trafficked her. *Id.* at 37-42. Finally, Jane Doe #2 alleges that unnamed traffickers groomed and trafficked her before the age of 18, that "a series of" "Romeo" pimps trafficked her, followed by a second group of unnamed pimps, and that defendants Sapphire Gentlemen's Club and Larry Flynt's Hustler Club trafficked her or benefited from her trafficking. *Id.* at 42-49.

Williams and Jane Doe #2 also allege that their trafficking began in Houston, and Williams and Jane Doe #1 allege that they were both trafficked in numerous states. *Id.* at 27-31, 34, 38, 42. Because numerous third parties and their independent actions collectively impacted

7

the plaintiffs in a significant way, and because the out-of-state origins and continuations of the plaintiffs' trafficking further attenuate Nevada's role in their respective ordeals, the plaintiffs' alleged causal chain is too weak to support standing against the City and State Defendants. *See Charleston v. Nev.*, 423 F. Supp. 3d 1020, 1027-28 (D. Nev. 2019) (dismissing comparable action, including some identical parties, for lack of standing), *aff'd*, 830 F. App'x 948 (9th Cir. 2020). Consequently, I dismiss with prejudice the plaintiffs' claims against Clark County, Nye County, the City of Las Vegas, Steve Sisolak, and Aaron Ford.[4,5] I deny amendment because the plaintiffs previously amended their complaint, and the standing deficiency cannot be cured by further amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

The Brothel Defendants joined in Clark County's motion. ECF No. 99. But because the Brothel Defendants also move separately to dismiss, I consider the claims against them under their own motion. The plaintiffs' motion to strike excess pages in Clark County's reply (ECF No. 95) is moot because the relevant causation analysis in the reply was within the page limit and the excess pages do not alter my decision. Aaron Ford and Steve Sisolak's motion to dismiss (ECF No. 168) is moot because Ford and Sisolak joined in Clark County's motion, they reiterate

---

[4] The plaintiffs allege third-party standing on behalf of individuals currently being trafficked in Nevada. ECF No. 49 at 49-50. While I am unconvinced that the plaintiffs successfully plead a requisite special relationship with presently trafficked individuals to support third-party standing, and while that class as pleaded is amorphous, the same standing defect that is fatal to the plaintiffs' claims against the State and City Defendants applies equally in the third-party standing context.

[5] In its motion, Clark County requests that I strike the First Amended Complaint for improper joinder of plaintiffs. A motion to sever the plaintiffs would have been more appropriate. Because I dismiss the State and City Defendants, and because their presence and the plaintiffs' claims implicating the constitutionality of legal prostitution in Nevada may have been the primary commonality between the plaintiffs, it is unclear whether there is justification for the plaintiffs to remain joined. I therefore deny Clark County's motion to strike. If they deem it appropriate, the remaining defendants may file a motion to sever.

the same standing arguments in their own motion, and the parties had adequate opportunities to be heard on those issues while briefing Clark County's motion.

### B. Brothel Defendants' Motion to Dismiss (ECF No. 98)

#### 1. Thirteenth Amendment

The Brothel Defendants move to dismiss the plaintiffs' Thirteenth Amendment claim, arguing that there is no private right of action under the Thirteenth Amendment, that they are not state actors for purposes of 42 U.S.C. § 1983, and that the plaintiffs failed to join indispensable parties with interests in the laws and ordinances that permit prostitution in Nevada. The plaintiffs respond that the Brothel Defendants are sufficiently entangled with public entities that they may bring a § 1983 claim based on the alleged Thirteenth Amendment violation. They argue that this entanglement results primarily from governmental regulation, including the imposition of mandatory STI testing. They also argue that they joined all necessary and indispensable parties.[6]

Under the Thirteenth Amendment, "[n]either slavery nor involuntary servitude . . . shall exist within the United States," and "Congress shall have power to enforce this article by appropriate legislation." U.S. Const. amend. XIII §§ 1-2. The Thirteenth Amendment's Enabling Clause "clothed Congress with powers to pass all laws necessary and proper for abolishing all badges and incidents of slavery." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968) (simplified). "There is not a private right of action under the Thirteenth Amendment; rather, plaintiffs must instead base such claims on one of the statutes implementing" it. *Simpson v.*

---

[6] I need not address whether the plaintiffs joined all necessary and indispensable parties because I dismiss the State and City Defendants from this action. Because only claims against private parties remain, the injunctive and declaratory relief the plaintiffs seek against the State and City Defendants is no longer viable.

*Agatone*, No. 2:15-cv-00254-RFB-CWH, 2018 WL 5074677, at *4 (D. Nev. Sept. 5, 2018); *see, e.g.*, *Flores v. City of Westminster*, 873 F.3d 739,753 (9th Cir. 2017) (permitting a claim under 42 U.S.C. § 1981 in part because "[t]he Civil Rights Act of 1866 implemented the Thirteenth Amendment); *United States v. Diggins*, 36 F.4th 302, 306-11 (1st Cir. 2022) (analyzing congressional enforcement under the Thirteenth Amendment's Enabling Clause, and holding the Hate Crimes Prevention Act to be constitutional enforcement); *United States v. Roof*, 10 F.4th 314, 391-92 (4th Cir. 2021) (same). While the Ninth Circuit has not yet addressed the issue, a claim under 42 U.S.C. § 1983 may be an appropriate way to redress certain violations of the Thirteenth Amendment. *See Jobson v. Henne*, 355 F.2d 129, 132 (2d Cir. 1966) (holding that a plaintiff stated a claim under § 1983 for a violation of the Thirteenth Amendment).

Section 1983 prohibits interference with federal constitutional rights under color of state law, so claims must be based on "state action" rather than a private actor's conduct. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 833 (1982) (explaining that § 1983's "under color of law" language is the "same thing" as the state action doctrine) (simplified). While there is no exact formula for determining what conduct constitutes state action, courts are guided by the public function test, the joint action test, the compulsion test, and the governmental nexus test. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). As argued here, the governmental nexus test asks whether "there is such a close nexus between the [s]tate and the challenged action that the seemingly private behavior may be fairly treated as that of the [s]tate itself." *Id.* at 1095 (simplified). Despite the several tests, "the central question[s] remain[] whether the alleged infringement of federal rights is fairly attributable to the government," and "whether the defendant[s] [have] exercised power possessed by virtue of state law and made possible only because [they are] clothed with the authority of

state law." *Id.* at 1096 (simplified); *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021).

The plaintiffs seem to concede that there is no free-standing private right of action under the Thirteenth Amendment, and they instead argue that their claim is properly brought under § 1983 given sufficient entanglement between the governmental and private defendants. ECF Nos. 127 at 5; 49 at 51.  But the plaintiffs have not sufficiently alleged a nexus between the governmental and private defendants such that the challenged conduct of sex trafficking can be fairly attributed to the state.  While state entities license and regulate prostitution in Nevada, this conduct does not amount to "pervasive entwinement to the point of largely overlapping identity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001); *see also Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 755 (9th Cir. 2020) ("[E]xtensive state regulation is not enough to create state action.").  While the state mandates STI testing of legal sex workers as part of its regulatory scheme, and "state action may lie in private conduct that is affirmatively commanded by state protocols," the plaintiffs do not challenge mandatory STI testing in their complaint. *See Rawson*, 975 F.3d at 755-56.  Instead, the plaintiffs challenge trafficking and involuntary servitude which is not conduct affirmatively commanded by the state. The plaintiffs do not plausibly allege that the affirmative mandate of STI testing bears a relationship to sex trafficking.  Consequently, the relationship between the challenged conduct and the mandate that the plaintiffs claim implicates state action is attenuated at best, and does not manifest an overlap in identity between the defendants and the state.

The plaintiffs likewise do not plausibly allege that the commission of sex trafficking is an exercise of power possessed by virtue of Nevada law or made possible only because of authority granted by Nevada. *See Pasadena*, 985 F.3d at 1167.  Instead, the challenged conduct is illegal

11

under Nevada law, and the plaintiffs allege that their experiences with trafficking both began and continued outside the state of Nevada, thereby further attenuating the nexus between the challenged conduct and the Nevada state government. *See* Nev. Rev. Stat. § 201.300; *Kirtley*, 326 F.3d at 1096.  Consequently, the plaintiffs have not plausibly alleged a sufficient nexus between the state and the private defendants to make the defendants' conduct state action under § 1983.[7]  This deficiency cannot be cured by amendment, and the plaintiffs have already amended once, so I dismiss with prejudice the plaintiffs' Thirteenth Amendment claim against the Brothel Defendants. *Lopez*, 203 F.3d at 1130.

### 2. TVPRA

The Brothel Defendants move to dismiss the plaintiffs' claim[8] under the TVPRA, arguing that the plaintiffs insufficiently allege that the Brothel Defendants either perpetrated or benefited from sex trafficking.  The plaintiffs respond that they adequately allege violations under both perpetrator and beneficiary theories because the Brothel Defendants subjected Jane Doe #1 to debt bondage at Chicken Ranch, and because the Brothel Defendants benefited financially from their own perpetration of sex trafficking.

---

[7] Dismissal may also be appropriate on statute of limitations grounds.  For actions arising under § 1983, I "apply [Nevada's] statute of limitations for personal injury actions, along with [Nevada's] law regarding tolling, . . . except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  The "applicable statute of limitations in Nevada is two years." *Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014); Nev. Rev. Stat. § 11.190(4)(e).  The plaintiffs allege that Williams escaped trafficking in 2017, Jane Doe #1 escaped the Brothel Defendants by 2018, and Jane Doe #2 escaped trafficking in 2018. ECF No. 49 at 36, 42.  Consequently, absent applicable tolling, the two-year statute of limitations expired prior to the filing of the complaint in September 2021.

[8] The plaintiffs plead two separate claims under the TVPRA, but the statutory provision underlying one claim describes criminal liability, while the provision underlying the other claim provides a civil right of action. *See* 18 U.S.C. § 1591 (criminal liability); *Id.* § 1595 (civil right of action).  Because this is a civil lawsuit, I refer to the plaintiffs' allegations under the TVPRA as a single claim under § 1595.

A defendant perpetrates trafficking in violation of the TVPRA when it "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person[,] . . . knowing [that] . . . force, threats of force, fraud, [or] coercion . . . will be used to cause [that] person to engage in a commercial sex act." 18 U.S.C. §§ 1591(a)(1)-(2). Coercion means "threats of serious harm to or physical restraint against any person[, or] . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm . . . or physical restraint." *Id.* §§ 1591(e)(2)(A)-(B). A defendant likewise violates the TVPRA if it "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" perpetrating trafficking. *Id.* § 1591(a)(2). Anyone "who is a victim of a violation of [§ 1591] may bring a civil action against the perpetrator" or beneficiary. 18 U.S.C. § 1595(a).

At this stage, Jane Doe #1 plausibly alleges that the Brothel Defendants trafficked her in violation of the TVPRA. She alleges that, during her employment at the Chicken Ranch, "the brothel arranged and controlled arrival and departure times for the prostituted women" via "the brothel's transportation system" between Las Vegas and Pahrump. ECF No. 49 at 41. The brothel required prostitutes to pay for this transportation, in addition to room, board, and mandatory medical examinations. *Id.* She also alleges that she was locked inside the brothel during her two-week shifts, that she "was not permitted to leave the brothel if she owed the brothel money" at the end of a shift, and that the Brothel Defendants otherwise subjected her to "debt bondage." *Id.* at 41-42.

These allegations support the reasonable inference that the Brothel Defendants transported, harbored, and maintained Jane Doe #1 while knowing that commercial sex acts were either forced or motivated by threats of restraint. *See* 18 U.S.C. §§ 1591(e)(2)(A)-(B).

According to the Brothel Defendants, "[a]t most, these allegations suggest Jane Doe #1 may have been stranded at the Chicken Ranch, but they do not imply that the Chicken Ranch . . . coerced[] or forced [Jane Doe #1] to engage in a commercial sex act." ECF No. 98 at 9. I disagree. Controlling her transportation and prohibiting (or threatening to prohibit) her departure pending the payment of debt plausibly alleges force, threat of force, or coercion leading to commercial sex acts. It is reasonable to infer that engaging in commercial sex acts would be the likely way Jane Doe #1 would be able to pay a debt when "stranded" at the brothel until the debt is paid. Her allegations of debt bondage assert a "scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in . . . physical restraint." 18 U.S.C. § 1591(e)(2)(B). It may be reasonably inferred that many or all of the commercial sex acts she performed at the Chicken Ranch were motivated by the coercive plan. Thus, Jane Doe #1 plausibly alleges a violation of 18 U.S.C. § 1591(a)(1). She also plausibly alleges that the Chicken Ranch benefited financially from this arrangement because it received payment for her debts and it profited from sex acts she performed. I therefore deny the Brothel Defendants' motion to dismiss Jane Doe #1's claim under the TVPRA. Because neither Williams nor Jane Doe #2 allege any facts as to the Brothel Defendants, I grant the motion to dismiss as to them, and only Jane Doe #1's claim remains.

### C.     Sapphire Club's Motion to Dismiss[9] (ECF No. 133)

The Sapphire Club moves to dismiss the plaintiffs' Thirteenth Amendment claim. I dismiss the claim with prejudice for the same reasons I dismissed it against the Brothel Defendants. The Sapphire Club also moves to dismiss the plaintiffs' TVPRA claim, arguing that

---

[9] Defendant Las Vegas Bistro, LLC is a Strip Club Defendant with which the plaintiffs group the Sapphire Club in the First Amended Complaint, but it has neither moved to dismiss nor joined any pending motions. As a result, all claims against Las Vegas Bistro, LLC remain pending.

Williams and Jane Doe #1 fail to allege any facts as to it, and that Jane Doe #2 fails to state a claim against it for either perpetrator or beneficiary liability. The plaintiffs clarify that only Jane Doe #2 alleges that the Sapphire Club trafficked her or benefited from her trafficking in violation of the TVPRA.[10] ECF No. 146 at 6.

Jane Doe #2 fails to plausibly allege a TVPRA violation based on her debt-bondage theory of liability. She describes many expenses that dancers incur working at strip clubs. ECF No. 49 at 44-46. According to her, these expenses result in dancers becoming indebted to the clubs, resulting in debt bondage. *Id.* at 46. But she also alleges that the clubs require dancers to pay outstanding debts upon signing in each night. *Id.* at 46-47.

These allegations are distinguishable from Jane Doe #1's allegations against the Brothel Defendants because Jane Doe #2 does not allege that dancers are transported by the clubs to remote locations or that they are barred from departing until debts are paid. Instead, she alleges that dancers cannot commence work until debts are paid. Thus, Jane Doe #2 could not dance at a club, and presumably perform commercial sex acts there, until she first cleared her debt. Although the onerous expenses imposed by the clubs may have precluded Jane Doe #2 from working, that does not plausibly allege debt bondage that would force her to perform sex acts as a condition precedent to freedom.

However, Jane Doe #2 plausibly alleges that the Sapphire Club violated the TVPRA by facilitating sexual abuse. She claims that many clients at the Sapphire Club "sexually assaulted [her]." ECF No. 49 at 48. She further alleges that "[a]fter sex buyers raped [her], the club[],

---

[10] Williams alleges that "her final trafficker trafficked [her] through . . . Sapphire." ECF No. 49 at 35. That single statement in the First Amended Complaint is insufficient to support a plausible claim by Williams against the Sapphire Club. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Jane Doe #1 makes no allegations against the Sapphire Club.

15

knowing this, would insist on collecting [its 40% share of] tips from [her]." *Id.* at 48-49.  The Sapphire Club's knowledge of rape and other sexual abuses came from "video and audio recording devices in each area of the club, including private rooms," which allowed the club to "see and hear all that occurred." *Id.* at 48-49.  From these allegations, it can be reasonably inferred that the Sapphire Club "provided" Jane Doe #2, knowing, or in reckless disregard of the fact, that means of force would cause her to engage in commercial sex acts. *See* 18 U.S.C. § 1591(a)(1).  These allegations also support a claim of beneficiary liability because the club allegedly benefited from its receipt of both fees from customers and tip percentages from Jane Doe #2.  Given the club's alleged perpetration, Jane Doe #2 plausibly alleges that it was a participant in its own venture, and that its perpetration implies knowledge of violations. *See* 18 U.S.C. § 1595(a).  I therefore deny the Sapphire Club's motion to dismiss Jane Doe #2's claim under the TVPRA.[11]  Because neither Williams nor Jane Doe #1 allege any facts as to the Sapphire Club, I grant the motion to dismiss as to them, and only Jane Doe #2's claim remains.

### D.     Greer's Motion to Intervene (ECF No. 105)

Russell G. Greer moves to intervene as of right, arguing that he has interests in the outcome of this litigation because only through legal prostitution in Nevada can he experience intimacy, and because he wishes to seek sanctions against plaintiffs' attorney, Jason D. Guinasso, for "waging" a "crusade" against legal brothels.  He also argues that the disposition of this case could impair his access to brothels and that the existing parties do not represent his interests because neither the brothels he frequents nor the counties in which they reside are parties to this action.  Alternatively, Greer seeks permissive intervention.  The plaintiffs respond

---

[11] Because this order resolves all pending motions to dismiss, I deny as moot Clark County's motion to strike the plaintiffs' errata seeking to add "Oral Argument Requested" to the captions of their dismissal oppositions. *See* ECF Nos. 161, 162, 163, 164.

16

that patronizing brothels and desiring to seek sanctions against an attorney are not significant, legally protectable interests, and that Greer's interests are adequately represented by the existing parties. The plaintiffs also argue that permissive intervention is inappropriate because Greer's interests are adequately represented, and intervention would cause undue delay and prejudice.

On timely motion, a party may intervene as of right under Federal Rule of Civil Procedure 24(a)(2) if he "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest, unless existing parties adequately represent that interest." Alternatively, I may permit permissive intervention if a party "has a claim or defense that shares with the main action a common question of law or fact," and whose intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)-(3). "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). When deciding whether intervention is appropriate, I am "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *Id.*

Because I grant Clark County's motion to dismiss (joined by the remaining State and City Defendants) the injunctive and declaratory relief the plaintiffs seek is no longer viable. Therefore, Greer's interest in legalized prostitution is no longer in jeopardy and his motion to intervene is partially moot. And even assuming that Greer has significant, legally protectible interests in this action, those interests are adequately represented by the existing parties. Even if the brothels Greer frequents and the counties in which they reside are not parties to this action, the existing parties have identical interests in Nevada's system of legal prostitution and in

guarding against frivolous lawsuits.[12]  Thus, Greer fails to satisfy his burden of showing that the requirements for intervention as of right have been met.  Permissive intervention is inappropriate because it would subject the plaintiffs to duplicative arguments and cause unnecessary delay.  I thus deny Greer's motion for intervention.

### III.    CONCLUSION

I THEREFORE ORDER that defendant Clark County's motion to dismiss **(ECF No. 53) is GRANTED** in part.  I dismiss with prejudice the plaintiffs' claims against the City and State Defendants (Clark County, Nye County, the City of Las Vegas, Steve Sisolak, and Aaron Ford).  I deny Clark County's motion to the extent it requests I strike the First Amended Complaint.

I FURTHER ORDER that plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2's motion to strike **(ECF No. 95) is DENIED** as moot.

I FURTHER ORDER that the State Defendants' (Steve Sisolak and Aaron Ford's) motion to dismiss **(ECF No. 168) is DENIED** as moot.

I FURTHER ORDER that the Brothel Defendants' (Western Best LLC and Western Best, Inc.'s) motion to dismiss **(ECF No. 98) is GRANTED** in part.  I dismiss with prejudice the plaintiffs' Thirteenth Amendment claim.  I also dismiss with prejudice the TVPRA claim as to plaintiffs Angela Williams and Jane Doe #2.

I FURTHER ORDER that the Sapphire Club's (SHAC, LLC and SHAC MT, LLC's) motion to dismiss **(ECF No. 133) is GRANTED** in part.  I dismiss with prejudice the plaintiffs' Thirteenth Amendment claim.  I also dismiss with prejudice the TVPRA claim as to plaintiffs Angela Williams and Jane Doe #1.

---

[12] This analysis is not to be understood as implying the plaintiffs' claims are frivolous.

I FURTHER ORDER that defendant Clark County's motion to strike **(ECF No. 164) is DENIED** as moot.

I FURTHER ORDER that Russell G. Greer's motion to intervene **(ECF No. 105) is DENIED**.

I FURTHER ORDER that the remaining defendants may file motions to sever within 30 days of this order if they believe it is appropriate.

DATED this 18th day of July, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE