**NATIONAL CENTER ON**
**SEXUAL EXPLOITATION**
Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
Victoria L. Hirsch*
Khari A. James *
1201 F Street NW, Suite 200
Washington, DC 20004
(202) 393-7245
lawcenter@ncose.com
*Admitted pro hac vice
Attorneys for Plaintiff

**GUINASSO LAW, LTD.**
Jason D. Guinasso, Esq.
5371 Kietzke Lane
Reno, NV 89511
Tel: (775) 993-8898
Jason@guinassolaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

ANGELA WILLIAMS; JANE DOE #1; & JANE DOE #2,

      Plaintiffs,

v.

STEVE SISOLAK, Governor of Nevada, in his official capacity; AARON FORD, Attorney General in Nevada, in his official capacity; THE CITY OF LAS VEGAS; CLARK COUNTY; NYE COUNTY; WESTERN BEST, INC. D/B/A CHICKEN RANCH; WESTERN BEST LLC; JAMAL RASHID; MALLY MALL MUSIC, LLC; FUTURE MUSIC, LLC; PF SOCIAL MEDIA MANAGEMENT, LLC; E.P. SANCTUARY; BLUE MAGIC MUSIC, LLC; EXCLUSIVE BEAUTY LOUNGE, LLC; FIRST INVESTMENT PROPERTY, LLC; V.I.P. ENTERTAINMENT, LLC; MP3 PRODUCTIONS, INC.; SHAC, LLC D/B/A SAPPHIRE GENTLEMEN'S CLUB AND/OR SAPPHIRE; SHAC MT, LLC; and LAS VEGAS BISTRO, LLC D/B/A LARRY FLYNT'S HUSTLER CLUB,

      Defendants.

Case No.: 2:21-cv-01676-APG-MDC

**PLAINTIFF JANE DOE #2'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION [ECF No. 326] OR, IN THE ALTERNATIVE, CLARIFICATION OF ORDER GRANTING DEFENDANT LAS VEGAS BISTRO, LLC'S MOTION TO COMPEL ARBITRATION [ECF No. 322]**

1

## I.   INTRODUCTION

Defendant Las Vegas Bistro's Opposition [ECF No. 333] reveals the fundamental weakness of its position: it cannot escape the fact that federal law requires courts, not arbitrators, to decide whether a sex trafficking victim had the capacity to form a contract with her traffickers. While Bistro attempts to distract with attacks on citation formatting and focuses almost exclusively on the 2018 agreement, it cannot refute the controlling legal principle that the court must decide questions of contract formation.

Bistro's Opposition notably fails to address the core issue of whether the disavowal doctrine can apply when a plaintiff challenges the very existence of contract formation. Instead, Bistro doubles down on its flawed premise that Jane Doe #2 "executed and operated under" agreements—a conclusion that improperly assumes the answer to the threshold question this Court must decide: whether an 18-year-old trafficking victim, under death threats and intoxication, could form any contract at all.

Further, Defendant's Opposition, fails to address three dispositive issues: (1) the Court expressly stated it was 'assuming' duress at formation—an assumption that requires resolution, not application of post-formation doctrines; (2) mental capacity challenges to contract formation are gateway issues for courts to decide under binding Ninth Circuit precedent; and (3) federal law prohibits enforcement of agreements that facilitate sex trafficking.

The core authorities remain valid: *Mayorga* confirms mental capacity challenges are for courts to decide, *Mayorga v. Ronaldo*, 491 F.Supp.3d 840, 854 (D. Nev. 2020); *Granite Rock* establishes that formation disputes require judicial determination, *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 296, (2010*)*; and the TVPRA prohibits agreements facilitating trafficking. These legal principles stand regardless of citation errors.

## II.    LEGAL STANDARD

Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties... may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). The Ninth Circuit recognizes that reconsideration is appropriate when the court committed clear error or the initial decision was manifestly unjust. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005).

## III.    ARGUMENT

### A.    The Court Must First Determine Contract Formation Before Applying Post-Formation Doctrines

Bistro's Opposition fundamentally misunderstands the sequencing required by federal law. The Opposition argues that Jane Doe #2 "executed and operated under both agreements" (ECF No. 333. at 9), but this puts the cart before the horse. The Court cannot apply post-formation doctrines like disavowal without first determining whether any contract was formed.

The Supreme Court's mandate is clear: "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010). This principle applies with particular force here, where Jane Doe #2 challenges whether she had the mental capacity to assent—a challenge that, as *Buckeye* noted, "concerns whether an agreement was ever formed between the parties, not the contract's validity." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

///

///

3

**B.      The 2018 Agreement Does Not Cure the Fundamental Formation Defects**

Bistro's Opposition focuses heavily on the 2018 agreement, claiming Jane Doe #2 "ignores the 2018 agreement altogether." (ECF No. 333 at 1). This is both incorrect and irrelevant.

Jane Doe #2's Declaration addresses her ongoing trafficking situation and lack of capacity throughout her time at the club. More fundamentally, even if a 2018 agreement exists, it cannot retroactively validate a void 2017 agreement or overcome the threshold question of whether a trafficking victim can form contracts with her traffickers.

Bistro's argument that Jane Doe #2 "operated under" the 2018 agreement (ECF No. 333 at 9) confuses performance under duress with ratification. As this Court recognized in *Mayorga*:

> [U]nlike a claim of fraud in the inducement, which can be directed at individual provisions in a contract, a mental capacity challenge can logically be directed only at the entire contract... [The distinction is between] challeng[ing] a contract on the basis of the conduct of the bargaining parties [versus] on the basis of [a bargaining party's] status.

*Mayorga*, 491 F.Supp.3d at 854 (adopting *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003)). A trafficking victim's continued performance while still being trafficked is evidence of ongoing coercion, not voluntary ratification. The 2018 agreement, executed while Jane Doe #2 remained under the control of her traffickers, cannot cure the fundamental incapacity that prevented formation of any valid agreement.

**C.      Bistro's Attacks on Citations Do Not Undermine the Controlling Legal Principles**

Bistro dedicates pages to attacking citation formatting and pin cites (ECF No. 333 at 2-7), but these diversionary tactics cannot obscure the controlling law. While Bistro quibbles over page numbers, it cannot dispute the fundamental holdings of the cases cited:

1. **Contract Formation is for Courts**: *Granite Rock*, *Three Valleys*, and *Sanford* all establish that challenges to contract formation must be decided by courts, not arbitrators. Bistro does not—and cannot—refute this principle. *Granite Rock*, 561 U.S. at 296 (2010); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1140 (9th Cir. 1991); *Sanford v. MemberWorks, Inc.,* 483 F.3d 956, 963 (9th Cir. 2007).

2. **Mental Capacity Goes to Formation**: *Mayorga* comprehensively analyzed this issue in this District and held that mental capacity challenges must be decided by the court. *Mayorga*, 491 F. Supp. 3d at 853-854 (2020). Bistro's Opposition does not even attempt to distinguish *Mayorga* on its reasoning.

3. **The FAA Requires Court Determination**: 9 U.S.C. § 4 mandates that when "the making of the arbitration agreement... be in issue," the court must "proceed summarily to the trial thereof." Bistro offers no alternative interpretation of this statutory mandate.

**D. Jane Doe #2 Has Presented Sufficient Evidence to Warrant an Evidentiary Hearing**

Bistro argues Jane Doe #2 failed to create a genuine issue of material fact (ECF No. 333 at 13-20), but this argument misapprehends both the standard and the evidence presented. Jane Doe #2's Declaration establishes:

- She was 18 years old and being actively trafficked (¶ 17)
- She was threatened with death if she didn't get hired at Hustler (¶ 13)
- She was under the influence of substances when signing (¶ 15)
- She was isolated in a basement with no opportunity to review documents (¶¶ 16, 20)
- She had no understanding of what she was signing (¶¶ 18-19)
- She never received copies of the agreements (¶ 21)

Bistro's claim that this constitutes merely a "conclusory, self-serving affidavit" (ECF No. 333 at 14) ignores that these are specific factual assertions about the circumstances of signing. The Ninth Circuit requires an evidentiary hearing when "genuine disputes of material fact exist as to the making of the agreement to arbitrate." *Sanford,* 483 F.3d at 963.

Moreover, Bistro's comparison to *Valenzuela* (ECF No. 333 at 16) is inapt. That case involved a simple signature dispute with no allegations of trafficking, incapacity, or duress. *Valenzuela v. GK Nevada LLC*, No. 2:23-CV-01477-GMN-BNW, 2024 WL 3460247, at *2 (D. Nev. June 26, 2024). Here, Jane Doe #2 presents extraordinary circumstances that go to the heart of whether any voluntary agreement could exist.

**E.      Bistro Cannot Escape the Federal Law Prohibition Against Enforcing Trafficking-Related Agreements**

Bistro's Opposition argues that accepting Jane Doe #2's position would mean "every contract entered into by anyone victimized by sexual abuse... would be void" (ECF No. 333 at 20). This is a strawman argument. Jane Doe #2 does not argue that all contracts by trafficking victims are void; she argues that contracts between traffickers and their victims that facilitate the trafficking are void.

The distinction is critical and grounded in federal law. The TVPRA criminalizes obtaining a person for commercial sex acts through "force, fraud, or coercion." 18 U.S.C. § 1591(a). An agreement that forces a trafficking victim to work at the venue where she is trafficked—and to arbitrate any disputes arising from that trafficking—is not an ordinary commercial contract. It is an instrument of the trafficking itself.

Bistro's citation to cases like *Calicdan* and *K.T.* (ECF No. 333 at 5-6) actually supports Jane Doe #2's position. Those cases involved employment disputes where trafficking was alleged

as a violation of the employment relationship. *Calicdan v. MD Niagara LLC*, No. 6:21-CV-03283, 2022 WL 2165638, at \*1 (W.D. La. May 17, 2022); *K.T. v. A Place for Rover*, CV No. 23-02858, 2023 WL 7167580 at \*1 (E.D. Pa. Oct. 31, 2023). Here, the agreement itself was procured through and in furtherance of the trafficking. The agreement was not incidental to the trafficking; it was instrumental to it.

### F.    The Court's August 26 Ruling Requires Clarification or Reconsideration

Bistro argues the Court's ruling was "unequivocal" (ECF No. 333 at 23), but the transcript reveals the Court did not address the key legal issue: whether questions of contract formation must be decided by the court before applying post-formation doctrines like disavowal.

The Court stated it was "assuming [Jane Doe #2] was subjected to duress at the time of signing both the 2017 and 2018 agreements" and found she "did not timely disavow once the duress was removed." (Tr. at 54-55). But this analysis presupposes that contracts were formed—the very issue that must be decided first under *Granite Rock* and *Mayorga*.

The Court cannot apply the disavowal doctrine without first determining whether Jane Doe #2 had the capacity to form any agreement. As *Mayorga* held, mental capacity challenges "must be determined by the court because [they] naturally go[] to both the entire [agreement] and the specific agreement to arbitrate within it." 491 F.Supp.3d at 854.

## IV.    BISTRO'S PROCEDURAL ARGUMENTS FAIL

### A.    The Motion is Timely and Appropriate

Bistro argues that Jane Doe #2's arguments are merely "repackaged" (ECF No. 333 at 13), but this mischaracterizes the motion. Jane Doe #2 seeks reconsideration because the Court's August 26 order applied post-formation doctrines without first determining whether contracts

were formed—a sequencing error that constitutes clear legal error under controlling Supreme Court and Ninth Circuit precedent.

### B.    An Evidentiary Hearing is Required

Bistro's argument that no hearing is warranted because Jane Doe #2 allegedly failed to meet the summary judgment standard (ECF No. 333 at 13-20) confuses the standard. The Federal Arbitration Act ("FAA") requires that when "the making of the arbitration agreement... be in issue," the court must "proceed summarily to the trial thereof." 9 U.S.C. § 4. Jane Doe #2 has raised genuine disputes about:

- Her mental capacity when signing

- The circumstances of duress and coercion

- Bistro's knowledge of the trafficking

- Whether any voluntary agreement was possible

These disputes cannot be resolved on the papers, particularly given the extraordinary circumstances of sex trafficking.

## V.    CONCLUSION

At its core, this case presents a simple question: Can a sex trafficking victim be forced into secret arbitration with entities that facilitated her trafficking based on documents she was coerced to sign? Defendant's Opposition, despite its length and technical arguments, offers no persuasive answer.

The Court should reconsider its order because:

1. **Federal law requires** the Court to determine contract formation before applying post-formation doctrines like disavowal.

2. **No valid contract can exist** between a trafficker and victim as part of ongoing criminal enterprise.

3. **Mental capacity and duress** are threshold formation issues that must be resolved by the Court, not an arbitrator.

4. **Clear error occurred** in sequencing the analysis by applying disavowal before determining formation.

5. **Material factual** disputes require an evidentiary hearing.

No court has ever forced a trafficking victim to arbitrate with her trafficker under these circumstances. This Court should not be the first.

Jane Doe #2 respectfully requests the Court grant reconsideration and either deny the motion to compel arbitration or conduct an evidentiary hearing on the threshold formation issues.

Dated: October 24, 2025                    Respectfully submitted,

                                           /s/ Jason D. Guinasso
                                           Jason D. Guinasso (SBN #8478)
                                           GUINASSO LAW, LTD.

                                           Christen M. Price*
                                           Benjamin W. Bull*
                                           Peter A. Gentala*
                                           Dani Bianculli Pinter*
                                           Victoria L. Hirsch*
                                           Khari A. James*
                                           NATIONAL CENTER ON
                                           SEXUAL EXPLOITATION

                                           *Attorneys for Plaintiff*
                                           *Admitted pro hac vice*

**ELECTRONIC CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on this 24th day of October, 2025, a true and correct copy of the foregoing **PLAINTIFF JANE DOE #2'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION [ECF No. 326] OR, IN THE ALTERNATIVE, CLARIFICATION OF ORDER GRANTING DEFENDANT LAS VEGAS BISTRO, LLC'S MOTION TO COMPEL ARBITRATION [ECF No. 322]** was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List.

*/s/ B. Francis*