ZACHARY M. YOUNGSMA
Nevada Bar No. 15680
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Ste. 2
Lansing, MI 48906
T: 517-886-6560
F: 517-886-6565
E: Zack@BradShaferLaw.com

*Counsel for Defendant Las Vegas Bistro,
LLC*

DEANNA L. FORBUSH*
Nevada Bar No. 6646
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Dr. Ste. 700
Las Vegas, Nevada 89135
T: 702-262-6899
F: 702-597-5503
E: dforbush@foxrothschild.com

* Designated Nevada Attorney Pursuant
to LR IA 11-1(b) and Nev. Sup. Ct. R.
42.1

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA WILLIAMS; et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVE SISOLAK; et al., <br><br> Defendants | Case No.: 2:21-cv-01676-APG-MDC <br><br> **DEFENDANT LAS VEGAS BISTRO, LLC'S MOTION TO STRIKE PLAINTIFF JANE DOE #2's ERRATA FILEINGS [ECF Nos. 336 & 338] AND AMENDED BRIEFINGS [ECF Nos. 337 & 339], AND FOR SANCTIONS** <br><br> **ORAL ARGUMENT REQUESTED[1]** |

COMES NOW Defendant LAS VEGAS BISTRO, LLC ("Bistro"), by and through its undersigned counsel, and moves under LR 7-2, 28 U.S.C. § 1927, and the Court's inherent authority, to strike Plaintiff Jane Doe #2 ("JD2")'s Errata filings, [ECF Nos. 336 and 338], and the Revised Motion and Revised Reply filed pursuant to those errata, [ECF Nos. 337 and 339], and for sanctions against JD2's counsel.[2]

---

[1] Pursuant to Judge Gordon's Chambers Practices and Judge Couvillier's Standing Order, Defendant Las Vegas Bistro, LLC notes that this argument will be handled by Zachary M. Youngsma, an attorney with less than six years of experience.

[2] Bistro notes that the filing of this motion does not waive its right to arbitrate. Motions directed to policing the integrity of the Court's docket, including motions to strike improper filings and to address counsel misconduct, are not inconsistent with arbitration, particularly where, as here, they arise in direct connection with enforcement of the Court's order compelling arbitration. *See, e.g.*, Hill v. Xerox Bus. Servs., LLC, 59 F.4th 457, 468 (9th Cir. 2023) (waiver requires conduct inconsistent with the right to arbitrate and resulting prejudice). This motion does neither; it protects, rather than abandons, the arbitral forum.

This Motion is supported by the accompanying Memorandum of Points and Authorities, any reply to be filed, any oral argument the Court may permit, and the record as a whole.

### PRAYER FOR RELIEF

WHEREFORE, Bistro respectfully requests that the Court:

A.    strike JD2's Errata filings, [ECF Nos. 336 & 338], and her Revised Motion and Revised Reply, [ECF Nos. 337 & 339];

B.    sanction JD2's counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent authority in the forms set forth on page 22 of the accompanying Memorandum of Points and Authorities;[3] and

C.    grant such other and further relief the Court deems just and proper.

Dated: December 5, 2025

Respectfully Submitted,

**SHAFER & ASSOCIATES, P.C.**

/s/ *Zachary M. Youngsma*
Zachary M. Youngsma
Nevada Bar No. 15680
**Shafer & Associates, P.C.**
3800 Capital City Blvd., Ste. 2
Lansing, Michigan 48906
T: 517-886-6560
F: 517-886-6565
E: Zack@BradShaferLaw.com

*Counsel for Defendant Las Vegas Bistro, LLC*

---

[3] Bistro does not seek sanctions under Rule 11 for two reasons. First, Rule 11(c)(2)'s safe-harbor procedure is unavailable as to the Original Filings, [ECF Nos. 326 & 334] because JD2 has already superseded those filings with the Errata and Revised Filings, [ECF Nos. 336-339]. Second, although Rule 11 could theoretically apply to the Revised Filings, invoking it would require a new 21-day notice-and-withdrawal cycle that would further multiple proceedings—precisely the inefficiency this motion seeks to prevent. The misconduct at issue, including the reckless use of unverified AI-generated material, is therefore more appropriately addressed under 28 U.S.C. § 1927 and the Court's inherent authority, both of which are better suited to remedy the post-hoc procedural misuse and burdens those filings imposed.

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES PRESENTED, INTRODUCTION, AND SUMMARY**

*Issues Presented*

1.      Whether filings labeled as "errata," but which introduce new authorities, delete prior citations and argument, and otherwise revise a fully briefed motion for reconsideration (including the reply brief), violate LR 7-2(g)'s prohibition on supplemental briefing without leave, and should therefore be stricken?

2.      Whether counsel should be sanctioned under 28 U.S.C. § 1927 ("§ 1927")—which permits fee-shifting when an attorney recklessly or unreasonably multiplies proceedings—where they filed a motion grounded in unchecked AI-generated non-existent authorities and quotations, dismissed Bistro's objections to those hallucinations as inconsequential and diversionary, reaffirmed those defects after notice, and then, 32 days later, used "errata" to re-brief that closed motion while retaining some of the same non-existent or inapplicable authorities, thereby forcing Bistro and the Court to expend further unnecessary time and resources?

3.      Whether the Court should exercise its inherent authority to impose sanctions where counsel submitted AI-generated non-existent or misstated authority, rejected and denied the defects when raised, has repeatedly violated the Local Rules and standing orders, and then, 32 days after briefing closed, used "errata" to recast portions of a motion they had already defended as accurate?

*Introduction & Summary*

This motion presents a straightforward proposition: litigation must proceed on accurate papers, through proper procedures, and with counsel fulfilling their Rule- and professional-based obligations. JD2's counsel did the opposite. They filed a motion filled with unchecked AI-generated quotations, nonexistent authority, and misstated precedent; subsequently categorized such matters as mere "citation errors" and accused Bistro of employing "diversionary tactics" for pointing these issues out; filed their reply with new AI-generated misquotations; and then, 32 days after briefing closed,

3

attempted to rewrite their papers through "errata" and "amended" filings (without first seeking leave of this Court) that introduced new authority, removed prior quotations and portions of argument, and *left the most serious inaccuracies intact.*

The Local Rules forbid this. § 1927 forbids this. And the Court's inherent authority is designed to prevent precisely this form of post-hoc revision, procedural backsliding, and reliance on fabricated authority. The question is not whether misconduct occurred; the filings speak for themselves, and counsel has now admitted that the errors arose from unverified AI-generated content. The question is the remedy. Bistro requests the filings be stricken and that targeted, proportionate sanctions be imposed to correct the record, compensate Bistro for the unnecessary burdens and costs imposed, and deter further misuse of AI and procedures by these attorneys.

*Factual Background*

After full briefing and hearing on Bistro's Motion to Compel JD2 to arbitrate her claims, [ECF No. 251], the Court granted that motion. [ECF Nos. 322, 330]. On September 23, 2025, JD2 filed a Motion to Reconsider that order. [ECF No. 326 (the "Original Motion")]. The next day, the parties sought an extension of the briefing schedule in part because the motion was "lengthy, dense, . . . and cites new case law not previously raised[.]" [ECF No. 327 at 1:23-24]. The Court then reset the response deadlines to October 17, 2025, for Bistro's opposition and October 31, 2025, for JD2's reply. [ECF No. 328]. Bistro filed its opposition on October 17, 2025, identifying multiple inaccurate quotations, misstated or misused authorities, and citations to non-existent authorities. [ECF No. 333]. JD2 filed her reply on October 24, 2025, without correcting those matters, defended her Original Motion, dismissed the inaccuracies as "quibbles" and "citation errors," and accused Bistro of employing "diversionary tactics" for pointing them out. [ECF No. 334 (the "Original Reply") at 2:23, 4:22]. The Original Reply also contained AI-generated hallucinations and so, on October 29, 2025, Bistro filed a Notice Regarding Misquotation in the Original Reply to ensure accuracy of the record. [ECF No. 335]. 32 days after the briefing cycle closed, JD2 filed two documents captioned as

"Errata," along with two "Amended" briefs. [ECF Nos. 336-339]. For clarity: ECF Nos. 336 and 338 are referred to as the "Errata Filings." ECF No. 337 as the "Revised Motion" and ECF No. 339 as the "Revised Reply." Collectively, ECF Nos. 337 and 339 are referred to as the "Revised Filings" and ECF Nos. 326 and 334 as the "Original Filings."

The Errata Filings stated that the "quotation and citation errors" in their Original Filings were "the result of using AI for research and drafting assistance and miscommunication amongst co-counsel regarding who would be responsible for final citation checks," and apologized "to the Court for filing this motion in non-final form and for any confusion it caused." [ECF No. 336 at 2:4-11; ECF No. 338 at 2:4-14]. The Revised Motion introduced new authority; removed prior citations, quotations, and text; and *repeated the most serious inaccuracies*. This motion follows.

## ARGUMENT

**I.   THE ERRATA AND REVISED FILINGS SHOULD BE STRICKEN BECAUSE THEY ARE UNAUTHORIZED SUPPLEMENTAL FILINGS UNDER LR 7-2(g).**

JD2's Errata and Revised Filings should be stricken because they operate as supplemental briefing filed without leave of court. Local Rule 7-2(g) is explicit: "Supplementation is prohibited without leave of court. A party may not file supplemental . . . briefs, [or] authorities . . . without leave of court granted for good cause. The judge may strike any supplemental filings made without leave of court." JD2 did not request, and the Court did not grant, leave to re-brief or provide new authorities for her fully briefed reconsideration motion. The Errata and Revised Filings are therefore procedurally improper on their face under LR 7-2(g) and should be stricken.

**A.   The Revised Filings are substantive revisions, not clerical errata.**

JD2's Revised Filings contained *new* authorities. [*Compare* Original Motion, ECF No. 326 at 10:19-22 (asserting support from a purported "*DOJ Human Trafficking Prosecution Manual* (2017)"), *with* Revised Motion, ECF No. 337 at 10:21-22 (removing that language and adding a new "see also" citation to a different 187-page DOJ document, without pincite or explanation) *and* Original Reply, ECF No. 334 at 6:3-4

(purportedly quoting Sanford v. MemberWorks, Inc., 483 F.3d 956 (9th Cir. 2007)), *with* Revised Reply, ECF No. 339 at 6:1-2 (removing that Sanford cite and quote and replacing it with a new sentence and new citation to Knapke v. PeopleConnect, Inc., 38 F.4th 824, 831 (9th Cir. 2022))].

They removed prior content. [*Compare* Original Motion, at 6:21-23 (containing the sentence beginning with "Similarly, courts apply . . . ."), *with* Revised Motion, at 6:21 (deleting that sentence entirely), *and* Original Motion, at 14:22-23 (containing the purported quote from 77 A.L.R. 2d. 426, at § 6), *with* Revised Motion, at 15:6 (removing the entire quoted sentence), *and* Original Reply, ECF No. 334 at 6:3-4, *with* 339 at 6:1-2]. And *the Revised Motion left the most serious defects untouched.* [*Compare* Original Motion, at 7:16-20 and 14:2-5 (relying on Sheriff v. Marcum, 105 Nev. 824 (1989) for contract-law propositions and on the non-existent Cross v. Cross, 95 Nev. 251 (1979) case), *with* Revised Motion, at 7:19-21, 13:8-9, and 14:11-13) (leaving those portions substantively unchanged)].

These changes are not clerical corrections; they are substantive revisions that make them new briefs. Treating them as mere "errata" would allow wholesale re-briefing of a fully submitted motion without satisfying any of the procedural safeguards of LR 7-2(g).

"Notices of Errata are used to correct 'clerical errors' and not to present new or substantially different evidence to the court." Swisher Hygiene Franchise Corp. v. Clawson, No. CV-15-01331-PHX-DJH, 2019 WL 4169003, at *2 (D. Ariz. Sept. 3, 2019) (quoting Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007); Bias, 508 F.3d at 1224 ("Notices of errata to clarify clerical errors are substantively different from attempts to file supplemental briefs unauthorized by local rules."). Thus, errata do not exist for argument revision, deletion and substitution of authorities, or re-briefing as JD2 has done with the Revised Filings.

Even the caption of her filings as being "Amended" documents illustrates the impropriety of those filings without leave of Court. In ordinary legal usage, that term denotes a substituted filing that replaces the original and introduces material not

previously included.[4] By styling her submissions as "amended," JD2 effectively concedes that the revisions are substantive. But errata cannot be used to amend a brief, let alone make substantive revisions. And the revisions themselves bear out that out: counsel selectively rewrote portions of the briefs rather than correct clerical errors.

And the consequences are not abstract. Because the revisions alter the sources and authoritative foundation of her arguments, they require, in response, fresh research, re-shepardizing, and reevaluation of issues already fully briefed. Errata, however, provide no mechanism for an opposing party to respond. The misuse of the "errata" procedure here placed Bistro in a procedural Hobson's choice: substantively respond outside the rules or allow revised authorities to stand unaddressed. This motion to strike is thus the only procedurally proper mechanism to resolve that dilemma. Permitting JD2's use of errata here would destabilize the clarity and finality of the briefing record, unnecessarily delay justice, subvert the Local Rules, and invite further piecemeal motion revising with no structured opportunity for the opposing party to substantively respond. *See* FNBN-RESCON I LLC v. Ritter, No. 2:11-cv-1867-JAD-VCF, 2014 WL 979930, at *6 (D. Nev. Mar. 12, 2014) (internal quotation marks and citations omitted) ("[A]llowing a party to file supplemental arguments and evidence whenever they wish it would subvert the local rules that are in place to ensure timely responses."). The only procedurally proper option for Bistro is to move to strike the offending filings.

**B. LR 7-2(g) prohibits supplemental filings without leave and contemplates striking the offending filings.**

Because JD2's Revised Filings are, in substance, effect, and caption, supplemental briefing and authorities, LR 7-2(g) governs. In violation of that rule, JD2 did not seek or receive leave to supplement (or "amend") and did not attempt to show good cause before filing the Revised Filings. This Court routinely uses LR 7-2(g) to strike such

---

[4] *See* Pleading, Black's Law Dictionary (12th ed. 2024) ("Amended Pleading: A pleading that replaces an earlier pleading and that contains matters omitted from or not known at the time of the earlier pleading."); Amend, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/amend (last visited Dec. 1, 2025) ("to change or modify (something) for the better").

unauthorized submissions. *E.g.*, Gayler v. Neven, No. 2:15-cv-00972-APG-CWH, 2016 WL 7404864, at *1 (D. Nev. Dec. 20, 2016) (striking a pro se litigant's offending surreply); Warren v. Hilton Grand Vacations, No. 2:23-cv-00988-APG-DJA, 2023 WL 6992596, at *2 (D. Nev. Oct. 23, 2023) (striking "surreplies or supplements filed without leave of court"); [Order, ECF No. 229 at p. 8 (striking Plaintiffs' previous unauthorized surreplies)].

A recent decision from this Court in circumstances not too dissimilar to those here underscores the point. In Brown v. Tromba, No. 2:17-cv-02396-APG-BNW, 2024 WL 5056064 (D. Nev. Dec. 9, 2024), the Court struck several filings submitted after a reconsideration motion was fully briefed, even though the *pro se filer* argued that the filings merely "provid[ed] legal citations and evidence to support his motion to reconsider." Id. at *5. The defect was procedural: supplemental filings were submitted without leave, in violation of LR 7-2(g). The Court emphasized that *even for a pro se litigant*, filing "rogue documents outside the usual course of briefing" was improper and warranted striking. Id. at *6. JD2's filings present the same defect and with far less excuse. She is represented by *seven* attorneys. Her attorneys had the benefit of Bistro's opposition, which identified the Original Motion's defects before filing her reply. They nevertheless filed a reply also containing misquoted or misattributed authority and then waited over a month before submitting new substantive briefings under the label of "errata" purporting to cure the defects. Her Revised Motion, however, failed to correct the most serious AI-generated hallucinations, and her Revised Reply adds new authority and argument. The same rule in Brown applies; the same remedy should follow.

Furthermore, aside from a technical violation of the Local Rules, allowing parties to revise substantive briefing through errata would undermine basic motion practice, invite serial rounds of rebriefing, and unnecessarily burden both opposing parties and the Court. LR 7-2(g) is designed precisely to prevent such procedural irregularities and promote forward movement on cases. *See* FNBN-RESCON I LLC, *supra*.

Case 2:21-cv-01676-APG-MDC   Document 342   Filed 12/05/25   Page 9 of 25

Because JD2's filings constitute supplemental briefing submitted without leave, they should be stricken under LR 7-2(g).

## II.   SANCTIONS ARE NECESSARY TO REMEDY THE PREJUDICE CAUSED BY JD2'S COUNSELS' MISUSE OF AI AND PROCEDURES.

AI is a powerful tool that, when used improperly, undermines the accuracy and reliability of legal proceedings. The court in Ferris v. Amazon.com Servs., LLC, 778 F. Supp. 3d 879 (N.D. Miss. 2025) aptly detailed the dangerous pitfalls which result from improper use of AI in legal proceedings:

> Courts exist to decide controversies fairly, in accordance with the law. This function is undermined when litigants using AI persistently misrepresent the law to the courts. . . . When [AI is] used carelessly, it produces frustratingly realistic *legal fiction that takes inordinately longer to respond to than to create. While one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true. As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system.*

Id. at 880-81 (emphasis added). Unfortunately, that is exactly what has happened here.

Without using the term "AI," Bistro's opposition identified the misstatements, misquotes, miscites, and non-existent caselaw contained in JD2's Original Motion. [ECF No. 333 at pp. 2-7]. Faced with this, JD2's counsel had two options. The first was to accept responsibility, withdraw the motion, and correct the errors directly. Choosing this option would have preserved credibility and perhaps allowed counsel to refile a proper motion. The second option was to minimize or deny the problem, reaffirm the filing's accuracy, and attempt to cure its defects through post-hoc submissions. Such a course would shift the burden of correcting the record to the Court and opposing counsel. JD2's legal team chose the latter course, and then some.

32 days after dismissing Bistro's concerns as trivial "citation errors" and accusing it of diversionary tactics, [Original Reply, at 2:23, 4:21-23], JD2's counsel acknowledged that the Original Filings contained "inadvertent quotation and citation errors" resulting from "using AI for research and drafting assistance[.]" [Errata, ECF No. 336 at 2:1-4,

2:7-8; ECF No. 338 at 2:6-7, 2:10-11 (same)]. Counsel apologized to the Court "for filing [the] motion in non-final form and for any confusion it caused." [Errata, ECF No. 336 at 2:4-11]. But that acknowledgment and apology do not remedy the burden their filings imposed *and are still imposing*. "'[R]egret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority.'" Mavy v. Comm'r of Soc. Sec. Admin., No. CV-25-00689-PHX-KML, 2025 WL 2355222, at *8 (D. Ariz. Aug. 14, 2025) (quoting Benjamin v. Costco Wholesale Corp., 779 F. Supp. 3d 341, 350 (E.D.N.Y. 2025)); *see also* Dehghani v. Castro, No. 2:25-cv-0052 MIS-DLM, 2025 WL 988009, at *5 (D.N.M. Apr. 2, 2025) ("While the court acknowledges that [counsel] was sincerely apologetic for his failure to ensure cases cited in his brief existed and for the extra work this has caused the Court, he has nonetheless failed to adhere to his obligations under Rule 11" and sanctioning the attorney was therefore proper).

Counsels' actions are the very kind of conduct that § 1927 and the Court's inherent authority (both discussed below) are designed to address. Their belated apology sidesteps the substance of the errors, shifts the burden of correction to the Court and opposing counsel, and does not reconcile with their earlier insistence that the Original Motion's inaccuracies were inconsequential and aggressively defended, or the inclusion of further inaccuracies in their Original Reply after having the benefit of Bistro's opposition. And even now, the Revised Filings still do not correct the most consequential AI-generated inaccuracies, despite counsels' assurances that the "amended Motion corrects the citation and quotation errors from the original motion." [ECF No. 336 at 2:17]. In these circumstances, sanctions under § 1927 and the Court's inherent authority are not merely appropriate, they are necessary to protect the integrity of the proceedings and, more broadly, the legal profession.

### A. The dangers of using AI in legal filings are well-understood and widely recognized.

The dangers of the use of AI are well documented in the legal community at this point; however, the very notion of "artificial intelligence" itself is a bit of a misnomer:

> Attorneys should understand that chatbots, including legal 'AI' chatbots, are large-language models (LLMs), not true 'artificial intelligence' out of the pages of science fiction. They are not designed to answer questions factually. They are designed to mimic patterns of words, probabilistically. When they are 'right,' it is because correct things were often drawn in a dataset they were trained on.

Green Bldg. Initiative, Inc. v. Peacock, No. 3:24-cv-298-SI, 2025 WL 3002143, at *2 (D. Or. Oct. 27, 2025) (quoting Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC, No. 23-11310, 2025 WL 2105286, at *1 (E.D. Mich. July 28, 2025)).[5] As such, "the use of artificial intelligence must be accompanied by the application of a*ctual intelligence* in its execution." Willis v. U.S. Bank Nat'l Ass'n as Tr., Igloo Series Tr., 783 F. Supp. 3d 959, 962 (N.D. Tex. 2025) (emphasis added; internal quotation omitted). As one court aptly put it, an attorney "must carefully evaluate, elucidate, and advocate— not hallucinate." Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC, No. 17-cv-81140, 2025 WL 1440351, at *7 (S.D. Fla. May 20, 2025).

The need for substantive *human contribution* becomes readily apparent when one considers that, as courts have recognized, "AI tools can produce case citations that conform to the Bluebook, but ultimately are not real." Benjamin, 779 F. Supp. 3d at 342. And, "'[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system.'" United States v. Hayes, 763 F. Supp. 3d 1054, 1064 (E.D. Cal. 2025) (quoting Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). "Not only do citations to hallucinated cases run afoul of a litigant's obligation to verify that legal contentions are 'warranted by existing law' under Rule 11(b), fake citations are also a profound waste of the opposing party's time, as well as the Court's time." Perez v. Evans, No. 24-cv-356-VSB-SN, 2025 WL 2726792, at *4 (S.D.N.Y. Sept. 25, 2025); Fang v. Hechalou US LLC, No. CV 25-1180 PA (JDEX), 2025 WL 3049873, at *2 (C.D. Cal. Sept. 12, 2025) ("[F]alse citation[] . . . errors [generated by AI] are highly problematic and simply unacceptable to the Court, especially given that

---

[5] The Peacock court continued: "Just as well-known are the ethical obligations of attorneys who choose to use generative AI when drafting court filings." Id. (collecting cases at n.1).

there have been many recent and highly publicized cases where attorneys' use of artificial intelligence has resulted in briefs that cite non-existent or hallucinated authorities.").

As explained in Fang, "[a]t this point, it is 'well-known in the legal community that AI resources generate fake cases.'" 2025 WL 3049873, at *2 (quoting Wadsworth v. Walmart Inc., 348 F.R.D. 489, 497 (D. Wyo. 2025)). "As a result, 'across the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases.'" Id. (quoting Benjamin, 779 F. Supp. 3d at 347 and collecting cases). As the Bankruptcy Court for the Northern District of Illinois succinctly summarized: "The bottom line is this: at this point, no lawyer should be using ChatGPT or any other generative AI product to perform research without verifying the results." In re Martin, 670 B.R. 636, 648 (Bankr. N.D. Ill. 2025); see, e.g., Lacey v. State Farm Gen. Ins. Co., No. CV 24-5205-FMO-MAAX, 2025 WL 1363069, at *3 (C.D. Cal. May 5, 2025) ("Even with recent advances [in AI], no reasonably competent attorney should out-source research and writing to this technology—particularly without any attempt to verify the accuracy of that material."); Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC, No. 2:24-cv-00326-JPH-MJD, 2025 WL 574234, at *2 (S.D. Ind. Feb. 21, 2025) ("It is one thing to use AI to assist with initial research . . . . It is an entirely different thing, however, to rely on the output of a generative AI program without verifying the current treatment or validity—or, indeed, the very existence—of the case presented. Confirming a case is good law is a basic, routine matter and something to be expected from a practicing attorney.").

These principles explain why careless use of AI "produces frustratingly realistic legal fiction that takes *inordinately longer to respond to than to create*," requiring "the opposing party and court [to] parse through the case names, citations, and points of law to determine which parts, if any, are true." Ferris, 778 F. Supp. 3d at 880-81 (emphasis added). Indeed, creating a legal-adjacent brief from AI takes the click of a button. Responding, however, takes inordinate amounts of time and expense. *See* id. This also

explains why courts consistently hold that AI-generated misrepresentations—regardless of intent, remorse, or even pro se status—warrant sanctions.

The only way this Court can curb this practice is to issue more and more severe sanctions that go beyond just reimbursing opponents for the costs they have unnecessarily incurred. Courts must make examples of those who have misused this technology despite the well-known dangers and ethical obligations.

Recent commentary reinforces this point. As Senator Grassley recently warned on the Senate floor, "every judge in America" must "take this issue seriously[.]"[6] And this District has already recognized the problem, and it is not going away (as exemplified by the repeated misconduct here). *See* Jackson v. United States Dep't of Health & Hum. Servs., No. 2:25-cv-00790-JAD-DJA, 2025 WL 2803356, at *2 (D. Nev. Oct. 1, 2025) ("This court is seeing increased reliance on AI-generated fake authority[.]"); Burch v. HCA Healthcare, Inc., No. 2:25-cv-01408-JAD-MDC, 2025 WL 2855089, at *5 (D. Nev. Oct. 7, 2025) ("This court has been flooded with filings relying, at least in part, on AI for research and writing, and has been finding significant errors in those documents."). These warnings show that the danger is accelerating and that meaningful sanctions are needed to curb this trend.

### B. Counsels' conduct satisfies § 1927 because it recklessly multiplied these proceedings.

The Court has "discretion to award 'the excess costs, expenses, and attorneys' fees reasonably incurred' when an attorney 'multiplies the proceedings in any case unreasonably and vexatiously.'" Meza-Perez v. Sbarro LLC, No. 2:19-cv-00373-APG-NJK, 2020 WL 5848091, at *3 (D. Nev. Sept. 30, 2020) (quoting 28 U.S.C. § 1927). "The imposition of sanctions under section 1927 is left to the sound discretion of the Court." Fang, 2025 WL 3049873, at *3 (citing Haynes v. City & Cnty. of San Francisco, 688 F.3d

---

[6] U.S. Senate Comm. On the Judiciary, *Press Release*, Sen. Chuck Grassley, *Grassley Calls on the Federal Judiciary to Formally Regulate AI Use* (Oct. 27, 2025), https://www.judiciary.senate.gov/press/rep/releases/grassley-calls-on-the-federal-judiciary-to-formally-regulate-ai-use (last visited Dec. 4, 2025).

13

984, 987 (9th Cir. 2012)). "To be sanctioned under § 1927, the attorney must have acted in bad faith." Meza-Perez, 2020 WL 5848091, at *3. In the Ninth Circuit, "bad faith" includes reckless conduct. As the court held in In re Keegan Mgmt. Co., Sec. Litig., "'[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument[.]'" 78 F.3d 431, 436 (9th Cir. 1996) (quoting Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1989)). And Fang synthesizes the doctrine expressly: "While 'bad faith is required for sanctions under the court's inherent power' to sanction, 'recklessness suffices' for the imposition of sanctions under section 1927." Fang, 2025 WL 3049873, at *3 (quoting B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002)). Thus, in this Circuit, recklessness satisfies § 1927's bad-faith requirement,[7] which is defined as "a departure from ordinary standards of care that disregards a known or obvious risk of material misrepresentation." In re Girardi, 611 F.3d 1027, 1038 n.4 (9th Cir. 2010).

JD2's counsels' conduct here satisfies these standards. As discussed above, it is well-known that AI can generate fake cases and quotations, that counsel must verify generative-AI outputs before filing them, and that, as courts have recently emphasized, the ethical obligations upon attorneys accompanying the use of AI are equally well-understood. *See* fn. 5, *supra*. Counsel filed a motion, [ECF No. 326], containing, among other things, fabricated authority (Cross and the "*DOJ Human Trafficking Prosecution Manual (2017)*") and material misstatements of authority (their treatment of Marcum, and 77 A.L.R. 2d 426; highlighting just two of these misstatements), and multiple quotations that do not appear in the sources cited. [*E.g.* Errata, ECF No. 336 at pp. 2-7; Opposition, ECF No. 333 at pp. 2-7]. All of this should have been known to the *seven-*attorney team *before* filing the Original Motion. But these errors were undeniably known after Bistro filed its opposition and before JD2 filed her Original Reply where

---

[7] *See also* In re Giga Watt Inc., No. 2:25-cv-00077-SAB, 2025 WL 3243828, at *2 (E.D. Wash. Nov. 20, 2025) ("In other words, for the purpose of sanctions under § 1927, a frivolous filing is automatically considered reckless and thus in bad faith, while a non-frivolous finding must be intended to harass in order to be found in bad faith.").

she "doubled down" on these AI hallucinations, dismissing Bistro's objections as "quibbles over page numbers," "attacks on citation formatting," "attempts to distract," and "diversionary tactics[.]" [Id. at 2:5, 4:22-23].

Those statements matter for § 1927. They show that counsel had actual notice of the inaccuracies yet (1) failed to immediately correct their initially inaccurate papers; (2) affirmatively denied or downplayed any defect; (3) portrayed Bistro's identification of the fabricated authority as employing "diversionary tactics" and "quibble[ing]"; and (4) filed a reply brief with similar inaccuracies. Counsels' choice of the term "quibbles" is telling. A quibble is "[a] small complaint or criticism about something unimportant." Quibble, Black's Law Dictionary (12th ed. 2024). But characterizing AI-generated false citations and quotations as "unimportant" is fundamentally inconsistent with the basic professional obligations of attorneys and requirements under the civil rules to verify the accuracy of legal authority cited before filing, which Counsel admitted to *not* doing. [Errata, ECF No. 336 at 2:7-9]. As the authorities discussed herein make clear, courts treat such actions as serious professional lapses, not trivialities. Counsels' own language therefore establishes the key § 1927 point: after receiving actual notice of the defects, they chose not to correct them and dismissed them as inconsequential (faulting Bistro for even raising them) and then included new AI-generated inaccuracies in the Original Reply and repeated the most serious hallucinations in the Revised Motion. This is recklessness under § 1927 in its most straightforward form.

And after being apprised of the inaccuracies in the Original Reply, JD2's counsel waited a month before filing the "Errata," [ECF Nos. 336, 338], and the Revised Filings. [ECF Nos. 337, 339]. Those filings did not simply correct clerical mistakes; they introduced new authorities, removed prior quotations, altered arguments, and added entirely new material, while leaving the most serious defects intact and reasserting them under Rule 11. As in Fang, these Revised Filings "necessitated additional briefing" (this motion), required Bistro to "spend time and resources" addressing, for the second time, "false citations," and forced (and is likely going to continue to force) this Court to

"spend significant resources" resolving issues that never should have arisen. 2025 WL 3049873, at *3. Moreover, counsels' assertion that "each case citation supports the legal principles and argument made in the motion," [Errata, ECF No. 336 at 2:18-19], is incorrect and confirms the point: even after being put on notice, counsel reaffirmed, repeatedly, that <u>Cross</u> exists and that <u>Marcum</u> supports JD2's contract theories. Both remain false.

This is precisely the "departure from ordinary standards of care" that § 1927 addresses. <u>Girardi</u>, 611 F.3d at 1038 n.4. By counsels' own admission, the inaccuracies stemmed from counsels' use of unverified AI-generated outputs. [ECF No. 336 at 2:7-8; ECF No. 338 at 10-11]. As courts have repeatedly held, reliance on AI without verification is itself reckless because the risk of fabricated citations is not, at this point, unknown. <u>Fang</u>, 2025 WL 3049873, at *2. Filing a brief (in this case, *three* briefs) without running a basic accuracy check alone falls below even minimum professional standards. *See* <u>Martin</u>, 670 B.R. at 648 (noting lawyers should verify AI results before filing); <u>Hall v. Acad. Charter Sch.</u>, No. 2:24-CV-08630-JMW, 2025 WL 2256653, at *4 (E.D.N.Y. Aug. 7, 2025) (noting the "obligation" to check case cites before filing "existed long before AI entered the legal industry landscape"). Here, counsel doubled down on the reply, tripled down in the errata, and, worse, filed the Revised Motion under Rule 11 *with the same substantive inaccuracies carried forward.*

This is not the first time these counsel have submitted quotations in federal courts that do not appear in the authorities cited, only to later attribute such missteps to mere citation errors. In the related <u>Doe v. Lombardo</u> case, now on appeal, on August 8, 2025, counsel filed an opening Ninth Circuit brief quoting <u>Does I thru XXIII v. Advanced Textile Corp.</u>, 214 F.3d 1058, 1073 (9th Cir. 2000) as stating that "fear of . . . reprisals will frequently chill [a person's] willingness to challenge . . . violations of their rights." [Exhibit 1 at p. 2 to the Declaration of Zachary M. Youngsma ("Y.Decl.") at ¶ 2]. Appellees Western Best, Inc. and Western Best, LLC responded on October 8th by pointing out that "[n]owhere in <u>Advanced Textile</u> does the language quoted by Appellant

appear." [Exhibit 2 at p. 3, fn. 19 to Y.Decl. at ¶ 3]. In their reply, filed October 29, 2025, Plaintiffs' counsel acknowledged the error and attributed it, as they do here, to an "inadvertent scrivener's error in citing case law[.]" [Exhibit 3 at p. 2, fn. 7 to Y.Decl. at ¶ 4]. They then provided A.B.T. v. U.S. Citizenship & Immigr. Servs., No. 2:11-cv-02108-RAJ, 2012 WL 2995064, at *6 (W.D. Wash. July 20, 2012), as the correct source. But that decision also does not contain the quoted language. Id. The recurrence of non-existent quotations in these counsels' filings across related matters underscores that these errors were not isolated mishaps but reflect recurring lapses of citation checking.

Lastly, counsels' arguments involving Cross and Marcum are frivolous in the most literal sense. An argument premised on a case that does not exist has no possible basis in law or fact; the same is true for using Marcum for contract-law propositions it nowhere addresses. The repeated assertion of such arguments independently satisfies § 1927's requirement of recklessly advancing meritless positions. *See also* Giga Watt Inc., 2025 WL 3243828, at *2 ("[U]nder § 1927, a frivolous filing is automatically considered reckless and thus in bad faith[.]").

Recklessness aside, the unreasonable and vexatious multiplication of proceedings is undeniable. *See* Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 886 (9th Cir. 2012) (quoting Black's Law Dictionary, 1701 (9th ed. 2009)) (defining "vexatious" as "'without reasonable or probable cause or excuse; harassing; annoying.'"). By forcing Bistro to revisit a fully briefed motion, re-shepardize authorities, and prepare additional briefing solely because counsel now admits to misusing AI and now seeks to cure *some* attendant errors through the "errata" mechanism, JD2's counsel imposed exactly the "excess costs" and unreasonable multiplication of proceedings that § 1927 forbids. Likewise, the Court must evaluate multiple versions of a motion on the same topic to determine which arguments and authorities are indeed operative. As in Dubinin v. Papazian, No. 25-CV-23877-RAR, 2025 WL 3248187 (S.D. Fla. Nov. 21, 2025), where AI-generated citations triggered additional briefing and hearings, sanctions are warranted. *See also* Ezzy Credit, LLC v. Prescription Techs., Inc., No. 8:24-cv-2436-SDM-AAS, 2025 WL 3067426,

at *2 (M.D. Fla. July 8, 2025) (concluding that the mere submission of "phony 'cases'" "'multiplied the proceedings'; and wasted both the public's and the defendants' time, money, and resources," which warranted the imposition of sanctions).

Finally, this is not the first time JD2's counsel have disregarded procedural safeguards in this case. That disregard has repeatedly caused opposing parties to file motions that should never have been necessary. Earlier in the litigation, the Court ordered the parties to submit a proposed protective order by October 25, 2024. [ECF No. 223]. When the parties could not reach agreement, JD2's counsel volunteered to file a "notice of compliance." [ECF No. 225 at p. 3, ¶ 4]. But attached to that filed notice were two declarations from Plaintiffs that attempted to supplement the record on their fully briefed motion to proceed pseudonymously. [ECF No. 225-1 at 120-131; ECF No. 226 at p. 3, ¶ 5]. This necessitated Defendants to move to strike those filings. The Court granted that strike motion and confirmed that the declarations "provide additional argument beyond what the Court directed the parties to do at the 10/02/24 hearing." [ECF No. 229 at 8:15-19].

Later, in violation of the Court's Standing Order, [ECF No. 217], and Local Rules, Plaintiffs' counsel filed a motion for protective order concerning the location of Jane Doe #1's ("JD1") deposition. [ECF No. 284]. That filing triggered a full round of briefing and, because JD1 submitted an oversized reply without requesting or obtaining leave as required by LR 7-3(c), prompted a motion to strike. [ECF Nos. 284, 287-90]. The Court sue sponte denied JD2's motion for failure to comply with the local rules and the Standing Order. [ECF No. 291]. About a month later, Plaintiffs' counsel filed another protective-order motion for JD1 on the same issue, again in violation of the Standing Order. [ECF No. 292]. That additional violation caused another full round of briefing. [ECF Nos. 293-94, 296]. When denying that second motion, [ECF No. 292], on July 25, 2025, the Court expressly noted that "Plaintiffs again fail to comply" with the Standing Order and cautioned that continued noncompliance "may result in . . . sanctions." [ECF No. 297].

18

But for Plaintiffs' counsels' insertion of additional argument into a procedural filing beyond what the Court directed, no prior motion to strike would have been required. But for counsels' repeated failure to follow the Standing Order and Local Rules, two unnecessary briefing cycles including another motion to strike would not have occurred. And but for the same pattern here, using the "errata" procedure to submit "amended" filings in a failed attempt to repair a closed briefing record, this motion, and the opposition, reply, and hearing that may follow, would not have been necessary.

Accordingly, under § 1927, the fees and expenses incurred in (1) responding to the Original Motion, (2) reviewing the Original Reply that reaffirmed the inaccurate and non-existent authorities, (3) preparing the Notice identifying the misquotations in the Original Reply, [ECF No. 335], (4) reviewing the Errata and Revised Filings that again repeated the most serious inaccuracies, [ECF Nos. 336-339], and (5) preparing and litigating this motion, are recoverable as excess costs caused by Plaintiffs' counsels' unreasonable and vexatious conduct. To give a sense of the costs: From September 23rd through October 29, 2025, counsel for Bistro were required to devote 79 hours of attorney and staff time for a total of $21,925.00 plus $354.61 in transcript and delivery expenses—$22,279.61 in all—directly attributable to Plaintiffs' counsels' misconduct.

**C.    Plaintiffs' counsels' repeated violations of rules and procedures along with their continued reliance on inaccurate authority, triggers the Court's inherent power to sanction.**

"Federal courts [] possess 'certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Dubinin, 2025 WL 3248187, at *2 (quoting Goodyear Tire & Rubber Co. v. Haeger, 518 U.S. 101, 107 (2017)). This includes "the power to control admission to its bar and to discipline attorneys who appear before it," "the power to punish for contempts," including for "disobedience to the orders of the Judiciary," and the "less severe sanction of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (internal quotation marks and citations omitted); *see also* T1 Payments LLC v. New U Life Corp.,

No. 219CV01816APGDJA, 2021 WL 3406304, at *4 (D. Nev. Aug. 4, 2021) (recognizing the Court's inherent authority "to control the conduct of attorneys in front of me"). It also "includes the power to strike items from the docket as a sanction for litigation conduct." Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010).

The Supreme Court has identified three categories where fee shifting sanctions are appropriate, two of which are relevant here: "as a sanction for the 'willful disobedience of a court order,'" and "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers, 501 U.S. at 45-46 (quoting Alyseka Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)). In addition, "[s]anctionable conduct includes 'recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose,'" as conduct tantamount to bad faith. Harper v. Nevada Prop. 1, LLC, 552 F. Supp. 3d 1033, 1046 (D. Nev. 2021) (quoting Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001)). And as Fink further held, "an attorney's reckless misstatements of law and fact, when coupled" with an additional such factor, "are sanctionable under a court's inherent power." Fink, 239 F.3d at 994.

JD2's counsels' conduct satisfies each of these categories. First, the Local Rules and this Court's Standing Order constitute "orders of the Judiciary,"[8] and counsel have repeatedly violated them by: (1) submitting unauthorized supplemental filings under the guise of "errata" in contravention of LR 7-2(g); (2) submitting citations to non-existent or inaccurate authority, contrary to LR I 7-3(c) (requiring that all citations "include the specific page(s) on which the pertinent language appears"); (3) filing oversized briefs, [*e.g.*, ECF Nos. 266, 288] without leave, in violation of LR 7-3(b)-(c); (4) injecting argument and attaching declarations into a notice of compliance, constituting a surreply without leave, in violation of LR 7-2(b); and (5) serially violating the Court's Standing Order regarding discovery disputes. These repeated violations independently

---

[8] Page two of the Local Rules adopts the amendments and is signed by then Chief Judge Miranda M. Du. Likewise, the Standing Order "establishes requirements and procedures for all civil cases assigned to Judge Couvillier" and is signed by Judge Couvillier as of June 2, 2025. [*See* Doc. 217].

implicate LR IA 11-8(c), which authorizes the Court to impose "any and all appropriate sanctions on an attorney" who fails to follow the Local Rules.

Second, JD2's counsel filed papers containing non-existent authority and materially inaccurate treatment of legal authority, then reaffirmed those inaccuracies multiple times even after they were expressly identified in opposition. That conduct fits neatly within the "willful disobedience of a court order" and "vexatious, wonton, or oppressive" categories.

Third, counsels' use of errata and "amended" filings to rewrite a closed, fully briefed motion reflects a misuse of procedural mechanisms that burden both Bistro and the Court by necessitating this motion. Finally, "[a] finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument[.]'"[9] Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) (quoting Keegan, 78 F.3d at 436). Here, as noted, *supra*, counsel still raises an argument based on the non-existent Cross case and contract-related arguments based on the notice-of-grand-jury-indictment case Marcum in the Revised Motion.

Taken together, the record reflects not an isolated lapse, but a sustained course of misconduct that (1) undermines the integrity of this Court's orders, the orderly administration of the docket, Fed. R. Civ. P. 1, and the integrity of the filed papers on which the Court must rely, and (2) foisted significant unnecessary costs on opposing parties. Accordingly, the Court should exercise its inherent authority to impose sanctions sufficient to both prevent further misconduct and remedy the prejudice already imposed. This is precisely what the Ninth Circuit recognizes as an appropriate use of inherent authority: to "protect the trial court's control of the trial process," "promote the just, speedy, and inexpensive determination of actions," "remedy the

---

[9] Frivolous meaning "[l]acking a legal basis or legal merit; manifestly insufficient as a matter of law." Frivolous, Black's Law Dictionary (12th ed. 2024). *Accord* Caputo v. Tungsten Heavy Powder, Inc., 96 F.4th 1111, 1155 (9th Cir. 2024) ("That is to say that when an argument is patently lacking in any basis in either law or fact, it can be fairly characterized as 'frivolous' for the purpose of a § 1927 sanction award.").

prejudice to" the opposing party, and "punish (and hopefully reform)" offending counsel. Barnd v. City of Tacoma, 664 F.2d 1339, 1342 (9th Cir. 1982).

### D. Bistro requests narrow sanctions.

For the reasons set forth above, Bistro respectfully requests that the Court impose targeted, proportionate sanctions tailored to remedy the prejudice caused and to deter future misuse of AI and the submission of improper post-hoc filings. Bistro requests the following narrow sanctions:

1. strike the Errata and Revised Filings, [ECF Nos. 336-339];

2. deny JD2's Original Motion, [ECF No. 326], with prejudice;

3. award Bistro its reasonable costs and fees caused by Plaintiffs' counsel's misconduct, including time spent: (a) responding to the Original Motion; (b) preparing the Notice identifying the Original Reply's inaccuracies, [ECF No. 335]; (c) reviewing the Errata and Revised Filings; and (d) preparing and litigating this motion, including any reply and hearing attendance, in an amount to be determined by the Court following a subsequent documentary submission as authorized by the Court;

4. require JD2's counsel, in any future filing in this matter, to certify that all authorities have been reviewed by a human and that all quotations, paraphrases, and citations are accurate, identifying by name the individual who conducted that review;

5. issue a written admonition reminding counsel of their obligations under the Local Rules, the Court's standing orders, and their professional duties when using generative AI; and

6. require counsel to file a copy of the sanctions order in (a) any case in the District of Nevada; (b) any appeal arising from such a case; and (c) any arbitration or alternative-dispute-resolution proceeding that arises from, is connected to, or is filed in parallel with any matter pending in this District, in which they appear as counsel of record for the next twelve months.

These sanctions are in keeping with what courts have imposed with similar misuse of AI.[10] They are narrow, proportional, and necessary to remedy the prejudice caused, correct the record, and deter further misconduct.

## **CONCLUSION**

The record is clear. The errata filings are unauthorized, the revised briefs improper, and counsels' handling of fabricated and misstated authorities disregarded the procedural guardrails that ensure orderly litigation. The Local Rules, § 1927, and the Court's inherent authority exist to prevent—and correct—precisely this kind of post-hoc revision and procedural drift.

Courts depend on accurate briefing, predictable procedure, and the professional obligations that safeguard both. JD2's counsel disregarded each. First by filing a motion grounded in unchecked AI-generated inaccuracies, then by doubling down and counter-attacking in the Reply, and finally by using errata to re-brief closed submissions without leave. The resulting burdens on Bistro and the Court are neither theoretical nor trivial. The sanctions Bistro requests are measured. They strike improper filings, correct the record, compensate for needless expense, and deter repetition of this misconduct; all functions squarely recognized under § 1927 and the Court's inherent authority.

---

[10] *E.g.*, Johansson, 792 F. Supp. 3d at 1357 (awarding attorney's fees and costs and requiring the offending attorney to file the sanctions order with any complaint he files in that District for two years); Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac, 2025 WL 574234, at *5 (recommending a $15,000 fine), report and recommendation adopted as modified, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211 (S.D. Ind. May 28, 2025); Wadsworth, 348 F.R.D. at 498 (revoking a pro hac vice admission and imposing $5,000 in fines); Seither, 2025 WL 2105286, at *2 (awarding attorney's fees and costs); Dubinin, 2025 WL 3248187, at *3 (dismissing the case without prejudice, awarding $4,030.90 in attorney's fees, and referring counsel to the state bar); In re Jackson Hosp. & Clinic, Inc., No. 25-30256-CLH, 2025 WL 3251167, at *17 (Bankr. M.D. Ala. Nov. 20, 2025) (public reprimand; revoking pro hac vice; requiring counsel to provide the sanctions order to all current clients, opposing counsel, and presiding judges; and directing service of the sanctions order on the Alabama and Georgia state bars); United States v. McGee, No. 1:24-cr-112-TFM, 2025 WL 2888065, at *1 (S.D. Ala. Oct. 10, 2025) (imposing a $5,000 fine; requiring counsel to file the sanctions order in every case in which he is counsel of record and all new cases for one year; and directing service of the order on bar authorities and Chief Judges of the other Districts in Alabama).

For these reasons as expanded upon above, Bistro respectfully requests that the Court grant the relief requested herein.

Dated: December 5, 2025                                    Respectfully Submitted,

**SHAFER & ASSOCIATES, P.C.**


*/s/ Zachary M. Youngsma*
Zachary M. Youngsma
Nevada Bar No. 15680
**Shafer & Associates, P.C.**
3800 Capital City Blvd., Ste. 2
Lansing, Michigan 48906
T: 517-886-6560
F: 517-886-6565
E: Zack@BradShaferLaw.com

*Counsel for Defendant Las Vegas Bistro, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Zachary M. Youngsma
Zachary M. Youngsma
Nevada Bar No. 15680
SHAFER & ASSOCIATES, P.C.