**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANGELA WILLIAMS, et al., | Case No.: 2:21-cv-01676-APG-MDC |
| Plaintiff | **Order (1) Denying Motion for Reconsideration, (2) Denying Amended Motion for Reconsideration, and (3) Granting in Part Motion to Strike and for Sanctions** |
| v. | |
| JAMAL RASHID, et al., | |
| Defendants | [ECF Nos. 326, 337, 342] |

Plaintiff Jane Doe #2 (JD2) moved for reconsideration of my order compelling arbitration of her claims against defendant Las Vegas Bistro, LLC (Bistro).  Her briefs contained AI hallucinations.  Despite Bistro pointing out these errors in its opposition, JD2 did not withdraw or correct her motion and her reply brief also contained misquotes.  Bistro then filed a notice identifying the reply's misquotes.  About a month later, JD2 filed multiple errata, an amended motion for reconsideration, and an amended reply that purported to correct these errors, but the amended motion still contained AI hallucinations.  Bistro moved to strike and for sanctions.  I held a hearing on this matter on June 4, 2025.

I grant in part Bistro's motion to strike and for sanctions.  I strike JD2's amended filings, deny her original motion for reconsideration with prejudice, and sanction JD2's counsel under 28 U.S.C. § 1927 and my inherent power.

**I.  JD2's counsel submitted briefs with AI generated hallucinations.**

JD2 moved for reconsideration of my order (ECF No. 322) compelling arbitration of her claims against Bistro. ECF No. 326.  Alternatively, she requested clarification of my ruling and an evidentiary hearing.  In response, Bistro argued that JD2 quoted language and cited cases that

do not exist or do not stand for the proposition cited.  On the merits, Bistro contended that JD2 had not shown clear error to support reconsideration.  In reply, JD2 asserted that Bistro "quibbles over page numbers," but that the law supports reconsideration. ECF No. 334 at 4.  Bistro thereafter filed a notice asserting that two quotations in JD2's reply do not appear in the cases she cited. ECF No. 335.

About a month later, JD2 filed two errata, an amended motion for reconsideration, and an amended reply. ECF Nos. 336-339.  The errata were filed "to correct inadvertent quotation and citation errors" in the original motion for reconsideration and reply brief. ECF Nos. 336 at 2; 338 at 2.  JD2's counsel acknowledged that the "errors are the result of using AI for research and drafting assistance and miscommunications amongst co-counsel regarding who would be responsible for final citation checks." ECF Nos. 336 at 2; 338 at 2.  Counsel apologized to the court for the errors. ECF Nos. 336 at 2; 338 at 2.  The amended motion and reply purportedly corrected those errors.

That prompted Bistro to move to strike the errata and amended filings and to request sanctions under 28 U.S.C. § 1927 and my inherent power. ECF No. 342.  Bistro argued that filing errata and amended briefs that raise new legal authority and arguments essentially re-briefed the reconsideration motion and violated Local Rule 7-2(g) as unauthorized supplementations.  Bistro thus moved to strike the new filings.  Additionally, Bistro argued that JD2's counsel should be sanctioned for recklessly multiplying the proceedings by filing AI-generated briefs without checking for hallucinated quotes and citations.  Bistro also noted that the amended motion still contains some of the same non-existent or inapplicable cases.  Bistro requested that I strike the new filings, deny the original reconsideration motion with prejudice, award Bistro's reasonable costs and fees in addressing the original and amended filings,

2

admonish counsel, require counsel to certify that a human has reviewed all citations and quotations in all future filings, and require counsel to file a copy of the sanctions order in various proceedings for the next year.

Defendants Western Best, LLC and Western Best, Inc. joined Bistro's motion to strike and for sanctions even though those defendants did not participate in the briefing of the reconsideration motion. The Western Best defendants "suggest that dismissal of this case is an appropriate remedy under the circumstances . . ., especially in light of Plaintiffs' counsels' (most of whom are appearing before this court on Pro Hac Vice admissions supported by Nevada attorney Jason Guinasso) history of repeating the instant offense, utterly without remorse, as cited to in [Bistro's] Motion joined here." ECF No. 343 at 2.

JD2 responded that the errata and amended briefs should not be stricken because they were filed in good faith and are not supplemental filings, contending that they do not raise new arguments or present new evidence, but only correct citations. She also argued that the National Center on Sexual Exploitation (NCOSE) counsels' attempt to cure the errors caused by local counsel Jason Guinasso's use of AI (unbeknownst to NCOSE counsel) was done in good faith, so the new filings were not vexatious, frivolous, or harassing. She asserted that there was a miscommunication between NCOSE attorneys and local counsel about who would perform substantive cite checking that led to neither doing it. And she contended that it is Bistro who is "multiplying proceedings by improperly shoehorning Rule 11 sanctions into its motion for Section 1927 sanctions, which is itself vexatious and should result in the denial of the motion." ECF No. 346 at 3.

Guinasso, who was pro bono local counsel at the time and has since withdrawn, took "full responsibility for [the] citation errors" in the original motion and the reply brief and his

3

"only request is that any consequences be directed solely at [him] personally." ECF No. 346-2 at 4. He stated that the work on the motion and reply was divided between him and NCOSE attorneys. *Id.* at 4-6. He was tasked with researching and preparing the first draft of the original motion and reply. *Id.* at 4. Guinasso sent the drafts to NCOSE attorneys "and requested that they edit, review, and double-check the authorities cited in those pleadings." *Id.* at 5. He was then responsible for implementing edits and filing the documents. *Id.* He admits he used AI. *Id.* Guinasso "did not conduct any editorial work to confirm the citations to the authorities within the closed universe of authorities [he] had selected and included in [his] project." *Id.* He "sent the documents to the attorneys at NCOSE to edit [his] first draft and confirm that the legal authorities cited were correctly cited." *Id.* at 6. The NCOSE attorneys did not know that he used AI. *Id.* He accepted their edits without independently reviewing the motion and reply. *Id.* Although Guinasso's usual practice is to pull and read every case to verify quotations and propositions, he did not do so in this situation because he had more work than he could handle and experienced some personal tragedies around this time. *Id.* at 6, 8. NCOSE attorneys brought the errors to his attention on November 24, 2025. *Id.* at 6. He apologized and set forth the procedures he has implemented to prevent further occurrences. *Id.* at 8-9.

NCOSE counsel Victoria Hirsch stated that Guinasso drafted the original filings, and he asked the NCOSE team to "double-check the authorities cited." ECF No. 346-1 at 3. Guinasso also asked the NCOSE team to "review and advise regarding the rhetorical direction" of the reply. *Id.* at 4. The NCOSE team "reviewed the drafts checking for general continuity and bluebooking, but did not conduct a cite check." *Id.* It was not her "understanding that Mr. Guinasso expected the NCOSE attorneys to conduct cite checks on his drafts." *Id.* According to

Hirsch, the "NCOSE attorneys believed final cite checks would be conducted by the filing party [Guinasso], consistent with common practice." *Id.*

On November 20, 2025, Hirsch and fellow NCOSE attorney Christen Price reviewed Bistro's notice (ECF No. 335) that stated there were errors in the original reply. *Id.* This led them to run a citation check on the original reply and motion, which revealed errors, so Hirsch suspected AI was used to draft the papers and began drafting the errata and amended filings. *Id.* Hirsch contacted Guinasso about the errors and that is when he advised that he had used AI. *Id.* Hirsch filed the errata and amended motions "to make it easier for the Court and opposing counsel to see where the changes were made." *Id.* at 5. She states she did not use AI or learn Guinasso had used it until he told her on November 24. *Id.* In her declaration, Hirsch did not offer any remedial procedures NCOSE has implemented to prevent future miscommunications with local counsel. At the hearing, Hirsch stated NCOSE does not use AI and it has added to its agreements with local counsels that they are not to use AI and, if they do, they must inform NCOSE in advance so NCOSE can perform a cite check.

There is no dispute that the original motion and reply contain multiple AI hallucinations, including a case that does not exist, a case cited for a proposition it does not discuss, and various misquotes. Tucked in a footnote in JD2's response to the motion to strike, the lawyers acknowledged that two AI hallucinations remain in the amended motion for reconsideration. ECF No. 346 at n.3. Specifically, both the original and amended motions cite to *Sheriff v. Marcum*, 105 Nev. 824, 828 (1989) for the proposition that "Nevada law recognizes that duress involving threats of death or serious harm renders agreements void, not merely voidable." ECF Nos. 326 at 7, 12; 337 at 7, 13. *Marcum* exists at that citation, but it is a habeas case that has nothing to do with duress, much less whether duress voids a contract. The second error that

5

remains in the amended motion is the citation to *Cross v. Cross*, 95 Nev. 251, 254 (1979), for the proposition that "duress by third parties voids contracts when the benefitting party knows or should know of the coercion." ECF No. 337 at 14.  *Cross* does not exist.

**II.  I grant in part Bistro's motion to strike and for sanctions, I strike the errata and amended filings, and I deny JD2's original motion for reconsideration with prejudice.**

I have the inherent power to sanction conduct that "abuses the judicial process," and that power "extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).  To sanction under my inherent powers, I "must make a specific finding [that] counsel's conduct in this case constituted or was tantamount to bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quotation omitted).  Citing fake cases, whether AI hallucinated or otherwise, is a sanctionable abuse of the judicial process. *See, e.g.*, *Malkeet Lnu v. Blanche*, --- F.4th ----, No. 24-4790, 2026 WL 1587554, at *7 (9th Cir. June 3, 2026) ("If an attorney files a brief with cases or quotations that do not exist, or completely misrepresents what a real authority stands for, it generally does not matter if he pulled the hallucination or misrepresentation from the output of an artificial intelligence tool or from his own natural intelligence."); *Whiting v. City of Athens Tenn.*, 170 F.4th 455, 461 (6th Cir. 2026); *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 239-40 (5th Cir. 2026).  I also may sanction an attorney under 28 U.S.C. § 1927 if the attorney unreasonably and vexatiously multiplies the proceedings.  "Recklessness suffices for § 1927 sanctions." *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).  AI's tendency to hallucinate cases is well known in the legal field.  Thus, an attorney

who uses AI but does not check the cases cited is reckless, and citing a fake case for a legal proposition is frivolous. *See Malkeet Lnu*, 2026 WL 1587554, at *6 ("Two types of mistakes, or 'hallucinations,' are most relevant: fabrications and inaccuracies.  Fabrications are instances in which the generative AI tool provides cases or quotations that do not exist at all.  Inaccuracies are more subtle.  The generative AI tool might cite to real authorities but provide an answer that is legally or factually inaccurate or not supported by the citation." (simplified by removing internal citations)).

Thus, I have the power to sanction JD2's counsel under my inherent authority and § 1927 because there is no dispute that JD2's original motion for reconsideration, reply, and amended motion for reconsideration present AI-generated fabrications and inaccuracies as existing legal authority.  Citing nonexistent cases to support legal propositions is an abuse of the judicial process, recklessly frivolous, and tantamount to bad faith.

I have read Guinasso's affidavit about the serious life events he was experiencing during the time frame of these violations, and I am sorry for his losses and the strain that must have put him under.  But, as he acknowledges, that does not excuse the over-reliance on artificial intelligence without a human cite-checking the papers.  I credit him for accepting responsibility and implementing procedures that hopefully preclude repeating this incident.

Although JD2's motion and Guinasso's declaration request that any sanctions fall solely on Guinasso, that is not appropriate here.  There were six NCOSE attorneys on this case at the time.  Additionally, the evidence before me shows that the NCOSE attorneys had some responsibility for cite checking.  Although the errors may have begun with Guinasso, both Guinasso and Hirsch state that the NCOSE attorneys were supposed to double-check his citations.  Moreover, Bistro's opposition to the original motion for reconsideration should have

put all attorneys on notice that there was an AI hallucination problem. Bistro devoted considerable space in its opposition to pointing out those errors, including that cases did not stand for the proposition cited, that quotations did not exist as cited, and that specific cited sources did not exist altogether. Rather than apologize and promptly fix the motion, JD2's counsel minimized Bistro's concerns and, in what is a bit of a pattern, criticized Bistro for attacking citation errors, calling Bistro's concerns quibbling and distraction devices.

The NCOSE attorneys admit they were asked to review the original draft reply brief. That reply brief mentioned that Bistro had challenged citations in the motion for reconsideration. Despite being asked to review the reply brief, Hirsch stated at the hearing that the NCOSE attorneys had not read Bistro's opposition brief, which is itself disturbing. Reading the draft reply brief should have tipped the NCOSE attorneys off to a potential problem. So laying all the blame on Guinasso's shoulders for the initial errors is not warranted.

Moreover, Hirsch admits that she drafted the amended filings. The amended motion for reconsideration still contains two critical citation errors. It cites the *Marcum* case for a proposition that *Marcum* does not even address, much less stand for. And it cites the *Cross* case, which does not exist. These are not minor errors. JD2's reconsideration motion rests in significant part on the argument that, under Nevada law, a contract procured through a threat is void, not voidable, and she cites *Marcum* and *Cross* for that proposition. Those errors remain uncorrected to this day, and the briefs with the offending AI hallucinations still have not been withdrawn. At the hearing, Hirsch stated that "even without those cases in there and without the premises that we said that they stood for, the substance of the motion is -- stands and is still arguable." But "[i]t is irrelevant that other cases may stand for the propositions asserted" because if other cases support the propositions, then it is the lawyer's "responsibility to cite

8

them." *Malkeet Lnu*, 2026 WL 1587554, at *8.  Moreover, later in the hearing, JD2's new local counsel candidly admitted that he could locate no existing Nevada law that would support the reconsideration motions' argument that duress makes a contract void rather than voidable.  Thus, the failure to withdraw or correct these citations in the amended motion is significant.

There is no question that JD2's counsels' conduct is sanctionable.  I grant Bistro's motion in part, but I do not award all the requested relief.  First, I strike the amended filings at ECF Nos. 336-339, both as a sanction under my inherent power and because the amended filings are supplements that were submitted without the court's leave in violation of Local Rule 7-2(g).  Under that Local Rule, a "party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause.  The judge may strike supplemental filings made without leave of court."  The new filings do not merely fix clerical errors like a typical errata.  Rather, they are new briefs with new authorities.  I did not grant leave for them to be filed, so I strike them.  Additionally, the amended motion still contains AI hallucinations on important issues in the reconsideration briefing.

Next, I deny with prejudice JD2's original motion for reconsideration at ECF No. 326.  That filing is based in considerable part on recklessly frivolous legal foundations because it cites to *Marcum* and *Cross* for key points in JD2's motion.  But *Marcum* does not stand for the stated proposition nor even address it, and *Cross* does not exist.  Despite having these issues brought to their attention multiple times now, JD2's attorneys still have not withdrawn or sought to further correct these problems.

Moreover, I have reviewed the motion and find no basis for reconsideration.  No new law or facts are identified, so reconsideration would be warranted only if I clearly erred. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  Because

*Marcum* and *Cross* do not support the motion, JD2 cites no legal authority to support her argument that under Nevada law, a threat voids a contract. I reiterate what I stated in my prior ruling that there is no genuine dispute that JD2 signed both contracts that contained arbitration clauses. JD2 has not put forth sufficient evidence to raise a genuine argument that no valid arbitration contract exists due to her trafficker's death threat. The Supreme Court of Nevada often looks to the Restatement (Second) of Contracts for guidance. *See, e.g.*, *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012); *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012). The Restatement (Second) of Contracts chapter 7, topic 2 Introductory Note (1981) sets out the general rules as follows:

> Duress takes two forms. In one, a person physically compels conduct that appears to be a manifestation of assent by a party who has no intention of engaging in that conduct. The result of this type of duress is that the conduct is not effective to create a contract (§ 174). In the other, a person makes an improper threat that induces a party who has no reasonable alternative to manifesting his assent. The result of this type of duress is that the contract that is created is voidable by the victim (§ 175). This latter type of duress is in practice the more common and more important. Either type may be exercised by one who is not a party to the contract as well as by one who is, but if the duress is of the latter type, avoidance is precluded if the other party to the transaction has in good faith and without reason to know of the duress either given value or relied materially (§ 175(2)).

Thus, under the Restatement, a contract formed under duress is void, rather than voidable, only when there is physical compulsion, like someone grabbing a person's hand and signing for them. *See* Restatement (Second) of Contracts § 174 (1981) ("This Section involves . . . those relatively rare situations in which actual physical force has been used to compel a party to appear to assent to a contract. Compare § 163. The essence of this type of duress is that a party is compelled by physical force to do an act that he has no intention of doing. He is, it is sometimes said, 'a mere mechanical instrument.' The result is that there is no contract at all, or a 'void contract' as distinguished from a voidable one."). In contrast, threats make a contract only

voidable under § 175. And for a voidable contract, the victim of the threats must disavow the contract within a reasonable time, which JD2 did not do. *See* Restatement (Second) of Contracts § 381(1) (1981) ("The power of a party to avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation is lost if, after the circumstances that made it voidable have ceased to exist, he does not within a reasonable time manifest to the other party his intention to avoid it."); *Int'l Techs. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1392 (9th Cir. 1998) ("Once the duress that forced a party to agree to a contract has ceased to exist, the victim of duress must tell the other party that it regards the contract as void, or else lose the voidability created by the duress."). I therefore find no basis to reconsider my ruling on duress.

As to JD2's capacity arguments, she does not present sufficient evidence to raise a genuine argument that she was so incapacitated as to lack the ability to contract. Nevada recognizes lack of capacity as a defense to contract formation. *See Gen. Motors v. Jackson*, 900 P.2d 345, 348-49 (Nev. 1995) (looking to the Restatement (Second) of Contracts and Corpus Juris Secundum for guidance on capacity to contract); *Heward v. Sutton*, 345 P.2d 772, 774 (Nev. 1959) (affirming the court's decision to annul a contract where one party lacked the mental capacity to contract at the time the contract was executed). But for an incapacity defense, the party must be "incapable of understanding the force and effect of the alleged agreement." *Gen. Motors*, 900 P.2d at 349 (emphasis omitted). "[M]ere mental weakness falling short of such incapacity will not invalidate a contract." *Id.* The "capacity to contract involves a person's *inability* to understand the terms of an agreement, not his actual understanding. Capacity relates to the status of the person rather than to the circumstances surrounding the transaction." *Id.* (emphasis in original).

Although JD2 stated she did not understand what she was signing, she does not present sufficient evidence from which a factfinder could conclude that she was incapable of understanding. JD2's assertions that she did not read the agreement, did not have time to understand its terms, was encouraged not to read it or ask questions, and did not know what arbitration was are not sufficient grounds for an incapacity defense. These arguments do not go to whether she was capable of understanding, just that she did not understand, or that outside circumstances pressured her into not taking steps to understand. She also mentions she was 18 but that would have made her an adult, so to the extent she is contending she lacked capacity due to her age, that is incorrect, and she cites no law in support. JD2 also relies on *Mayorga v. Ronaldo*, 491 F. Supp. 3d 840 (D. Nev. 2020). But the plaintiff in that case presented evidence from a psychiatrist and therapist who treated her within five years of the alleged sex assault and who opined that she lacked capacity at the time she signed the agreement. *Id.* at 855. The *Mayorga* plaintiff also presented evidence from family members about her mental capacity at the time of contracting. *Id.* JD2 presents no similar evidence.

As for her intoxication arguments, that defense succeeds only if the "actual intoxication dethroned [her] reason, or [her] understanding was so impaired as to render [her] mentally unsound when the act was performed." *LaBarbera v. Wynn L.V., LLC*, 422 P.3d 138, 141 (Nev. 2018) (quotation omitted). JD2's statement that she was high at the time she signed the contracts, without any evidence of the extent of her impairment, and in the face of her rather detailed memory of at least the 2017 contract signing, does not suffice. Even if she raised an issue of fact on this point, intoxication also requires prompt disavowal, which JD2 did not do. *Id.*

I reject JD2's assertion that an arbitration contract is void if a person asserts a claim under the Trafficking Victims Protection Reauthorization Act against his or her alleged

12

trafficker.  There is no basis in that Act to conclude that public policy automatically voids arbitration agreements in this context.  Congress could have provided for that outcome but has not chosen to do so.

Finally, JD2 raises for the first time on reconsideration an argument that the contract is void as an illegal contract, and she cites various legal authorities on that principle.  She could and should have raised that issue and cited the authorities she now cites in response to Bistro's motion to compel arbitration, but she did not.  So, I deny reconsideration on that ground.  Additionally, under the Supreme Court cases *Buckeye Check Cashing, Inc.*, *Prima Paint*, and *Rent-A-Center*,[1] JD2's challenge that the contract is illegal is one for the arbitrator, not this court, because she challenges the entire agreement as illegal.  There is nothing illegal about contracting for arbitration.  Thus, whether the entire contract is void for illegality is a question for the arbitrator.  In sum, I deny JD2's original motion for reconsideration with prejudice, both as a sanction because it contains AI hallucinated citations and because, on the  merits, I do not find reconsideration is warranted.

I also impose monetary sanctions in the form of Bistro's[2] reasonable attorney's fees jointly and severally against the National Center on Sexual Exploitation and Guinasso Law, Ltd.  Reasonable attorney's fees are an appropriate sanction under both my inherent power and 28

---

[1] *Buckeye Check Cashing, Inc. v Cardegna*, 546 U.S. 440 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010).

[2] I do not award fees to the Western Best defendants for their joinders.  They were not involved in the original reconsideration briefing and suffered no harm from the AI hallucinations.  They could have said nothing, so any fees they incurred were by choice.  Moreover, the sanction the Western Best defendants requested was to dismiss the entire case.  But case-dispositive sanctions are limited to extreme situations based on considerations such as prejudice to the opposing party and the unavailability of lesser sanctions. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958-60 (9th Cir. 2006).  The Western Best defendants were not prejudiced by the sanctionable conduct and lesser sanctions are available, as shown through the sanctions requested by the only affected party, Bistro.

13

U.S.C. § 1927. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (inherent power); 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). "Citing even a single fake case can be sanctionable because no brief, pleading, motion, or any other paper filed in any court should contain any citations—whether provided by generative AI or any other source—that a lawyer has not personally read and verified." *Whiting*, 170 F.4th at 461 (simplified)). Citing fake legal authority is not harmless. It wastes the other parties' and the court's resources trying to track down the nonexistent cases. *Id.* at 467 ("Citing fake cases unnecessarily burdens the court and the taxpayers, so courts can and should fine the offending lawyers to reimburse the court for its time." (simplified)). And the burden it imposes on the opposing party and the court is lopsided because "[w]hile one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true. As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system." *Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 880-81 (N.D. Miss. 2025). To rectify that imbalance, an award of fees is warranted in this case.

But in fashioning an appropriate sanction, "the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear*, 581 U.S. at 108 (quotation omitted). So I can award only those attorney's fees that were incurred "because of the misconduct at issue." *Id.*

I award Bistro its reasonable fees and costs for responding to the original motion for reconsideration because that motion was littered with AI-generated hallucinations that Bistro was forced to expend time and resources to address. However, Bistro's response brief also addressed JD2's motion on the merits, which it would have had to do even if there were no AI hallucinations. So Bistro must reduce its requested fees for this filing to account only for the time spent addressing the AI hallucinations. I grant Bistro's fees in their entirety for the notice filed at ECF No. 335 because it was necessitated by the misquotes in JD2's reply brief and it addressed no other issues. And I grant Bistro reasonable fees for its time spent reviewing the new filings, preparing the motion to strike and the reply to the motion to strike, preparing for the hearing, and attending the hearing. None of that would have been necessary had JD2's counsel not cited hallucinated authority in the first place, tried to redo the briefing from scratch with new briefs that still contained hallucinations, and never withdrew the offending filings.

I reject JD2's argument that Bistro's fees are its own fault for not filing a Rule 11 motion. Bistro did not originally seek sanctions and instead was content to point out the errors in its response brief and let the original motion for reconsideration play out on the papers. It was JD2's counsel who did not read the opposition brief that pointed out the errors, did not withdraw the briefs, decided to instead file the errata and amended briefs, did so without leave of court, left AI hallucinations in the new filings, and materially altered her briefs through a procedural mechanism that did not give Bistro an opportunity to respond to these changes. Despite acknowledging that the amended reconsideration motion still has AI hallucinations, JD2's counsel has not withdrawn that document or moved to correct it to this day.

The parties' counsel shall promptly confer and attempt in good faith to determine and agree upon such reasonable attorney's fees and costs. If the parties cannot stipulate to the

15

amount of attorney's fees and costs owed by June 26, 2026, then Bistro may file a motion for attorney's fees consistent with Local Rule 54-14 by July 14, 2026.

**III.  Conclusion**

I THEREFORE ORDER that plaintiff Jane Doe #2's motion for reconsideration **(ECF No. 326) is DENIED with prejudice**.

I FURTHER ORDER that **ECF Nos. 336-339 are STRICKEN**.

I FURTHER ORDER that defendant Las Vegas Bistro, LLC's motion to strike and for sanctions **(ECF No. 342) is GRANTED in part** as set forth in this order.

DATED this 9th day of June, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE